LAKE COUNTY COUNCIL, as the governmental fiscal body of Lake County, Indiana, Troy Montgomery, Robert Crossk, William Smith, Bernadette Costa, John Aguilera, Lance Ryskamp, and Larry Blanchard, in their official capacity as members of the Lake County Council and individually as taxpayers residing in Lake County, Indiana, Board of Commissioners of Lake County, Indiana, Frances Dupey, Rudolph Clay, and Gerald Scheub, in their official capacities as members of the Lake County Board of Commissioners and individually as taxpayers residing in Lake County, Indiana, and Lake County, a political subdivision of the State of Indiana, individually and on behalf of all other property owning taxpayers within the jurisdictional limits of Lake County, Indiana, Petitioners,

v.

STATE BOARD OF TAX COMMISSIONERS, Indiana Family & Social Services Administration, Morris Wooden, Auditor, State of Indiana, Joyce Brinkman, Treasurer, State of Indiana, and State of Indiana, Respondents.

No. 45T10–9807–TA–00084.

Tax Court of Indiana.

Jan. 19, 1999.

272

Peter L. Benjamin, Merrillville, Gerald M. Bishop, Greco Pera & Bishop, Merrillville, for Petitioners.

Jeffrey A. Modisett, Attorney General of Indiana, Angela L. Mansfield, Deputy Attorney General, Beth H. Henkel, Deputy Attorney General, Indianapolis, Indiana, for Respondents.

## ORDER ON MOTION TO DISMISS

FISHER, J.

The petitioners have filed this original tax appeal challenging the constitutionality of the Health Care for the Indigent (HCI) property tax levy.

## BACKGROUND

■ The HCI program was enacted to provide cost-free emergency medical care for the poor. *See Lutheran Hosp., Inc. v. State Department of Pub. Welfare,* 571 N.E.2d 542, 544 (Ind.1991); *St. Mary's Med. Ctr. v. Warrick County,* 671 N.E.2d 929, 931 (Ind.Ct. App.1996), *trans. denied.* The program is funded through a tax levy on the property located in each county and distributions from the Financial Institutions Tax and the Motor Vehicle Excise Taxes. *See* IND.CODE § 12–16–14–1 (1998). The tax levy is imposed by the fiscal body[1] of each county and is treated like any other state and county ad valorem property tax. *See id.* § 12–16–14–2 (1998). In imposing the tax levy, the county fiscal body has no discretion as to the rate of tax because it is determined by a statutory formula.[2] *See id.* § 12–16–14–3 (1998). The State Board is charged with reviewing each county's property tax levy and enforcing the requirements of the HCI property tax levy. *See id.* § 12–16–14–4 (1998). Once the property taxes are collected, they are deposited in the county HCI fund. *See id.* § 12–16–14–5

(1998). The money in the county HCI fund is then deposited in the state HCI fund. *See id.* § 12–16–14–6 (1998). Payments to emergency medical care providers are made from the state HCI fund. *See id.* § 12–16–7–3 (1998).

Under the HCI program, the HCI property tax levy (i.e., property tax rate) is not uniform across the State; it varies from county to county. Additionally, a county's property tax levy is not correlated to how much of the state HCI fund is spent in the particular county. Two of the petitioners, Mr. Troy Montgomery and Ms. Frances DuPey were concerned about this, and they each wrote a letter to Mr. Frank J. Sabatine, Chairman, State Board of Tax Commissioners (State Board) to express their concerns. In their letters, Mr. Montgomery and Ms. DuPey, stated that Lake County's HCI property tax levy was too high and specifically requested a refund of the "HCI overpayment" by Lake County taxpayers over the past three years.

Mr. Sabatine responded to Mr. Montgomery and Ms. DuPey in a letter dated June 5, 1998. The letter was not unsympathetic to Mr. Montgomery's and Ms. DuPey's concerns and acknowledged that "it is apparent that the amount of reimbursements received by Lake County providers has not grown as quickly as the HCI property tax levy." Letter From Frank J. Sabatine, Chairman, State Board of Tax Commissioners, to Troy Montgomery, President, Lake County Council and Ms. Frances DuPey, President, Lake County Commissioners 2 (June 5, 1998) (Petitioners' Exh. A) [hereinafter Sabatine Letter]. However, Mr. Sabatine stated that the State

---

1. *See* IND.CODE § 3–5–2–25 (1998) (defining fiscal body).

2. The formula is as follows:
    (1) the hospital care for the indigent property tax levy imposed for taxes first due and payable in the preceding year; multiplied by
    (2) the statewide average assessed value growth quotient, using all the county assessed value growth quotients determined under IC 6–1.1–18.5–2 for the year in which the tax levy under this section will be first due and payable.
   IND.CODE § 12–16–14–3.
   This statutory formula, though recodified, has been in place since 1989.

Prior to 1989, the HCI property tax levy was calculated by using a formula that took into account actual county expenditures (prior to 1987, county departments of public welfare were responsible for payment of HCI costs, *see id.* § 12–5–6–6 (1982) (repealed 1992)) for the HCI program during 1984 through 1986. *See id.* § 12–5–6–16 (Burns 1988) (repealed 1992). In 1987, the State became responsible for HCI costs. *See id.* § 12–5–6–6 (Burns 1988) (repealed 1992). When the State took over this responsibility for HCI costs, the program remained (as it does today) funded in part by ad valorem property taxes.

Board had no power to alter the statutory formula, no power to declare the statutory formula unconstitutional, and therefore had no power to issue a refund on the alleged "HCI overpayment." Sabatine Letter at 4.

On July 20, 1998, the petitioners filed the instant original tax appeal. They contend that the property tax component of the HCI program violates article I, section 23 and article X, section 1 of the Indiana Constitution because Lake County taxpayers allegedly pay a disproportionate share of the HCI property taxes collected in Indiana due to the high HCI property tax levy in Lake County. On October 9, 1998, the respondents filed a motion to dismiss alleging that the Court did not have subject matter jurisdiction over this case and challenging the standing of some of the petitioners. On December 2, 1998, the Court heard the arguments of counsel regarding the respondents' motion. Additional information will be provided as necessary.

## ANALYSIS AND OPINION

In support of their motion to dismiss, the respondents contend that the Court does not have subject matter jurisdiction over this case and that the governmental petitioners lack standing to challenge the constitutionality of the HCI property tax levy. Both contentions will be addressed in turn.

It is axiomatic that "[t]he tax court is a court of limited jurisdiction." IND.CODE § 33–3–5–2(a) (1998); see also State Bd. of Tax Comm'rs v. Mixmill Mfg. Co., 702 N.E.2d 701, 702 (Ind.1998). Its jurisdiction is limited to cases that "arise under the tax laws of this state and that [are] initial appeal[s] of final determination[s] made by" either the Department of State Revenue with respect to a listed tax[3] or the State Board, as well as "any other jurisdiction conferred by statute."[4] IND.CODE § 33–3–5–2(b) (1998). As a further limit on this Court's jurisdiction, the General Assembly has provided: "If a taxpayer fails to comply with

any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." Id. § 33–3–5–11(a) (1998); see also Mixmill Mfg. Co., 702 N.E.2d at 704 ("In view of the explicit language of these provisions, we can only conclude that the legislature intended to require the taxpayer to follow all statutory procedures for review before going to the Tax Court.").

■ With these principles in mind, the Court turns to an analysis of the respondents' motion. The parties do not dispute that this case "arises under" the tax laws of Indiana. However, because subject matter jurisdiction cannot be conferred upon the Court by the parties, see Sons v. City of Crown Point, 691 N.E.2d 1237, 1239 (Ind.Ct. App.1998), the Court will evaluate the issue. See City Securities Corp. v. Department of State Revenue, 704 N.E.2d 1122, 1125 (Ind. Tax Ct. 1998).

■ A case "arises under" the tax laws of Indiana if: "1) an Indiana tax statute creates the right of action; or 2) the case principally involves collection of a tax or defenses to that collection." Sproles, 672 N.E.2d at 1357; see also Common Council v. Matonovich, 691 N.E.2d 1326, 1329 (Ind.Ct. App.1998), trans. denied. Under IND.CODE § 12–16–14–1, the HCI fund consists of "1) [a] tax levy on the property located in each county [and t]he financial institutions tax (IC 6–5.5) and motor vehicle excise taxes (IC 6–6–5) that are allocated to the fund." The petitioners contest the constitutionality of that tax. Consequently, this case "arises under" the tax laws of this state. See Sproles, 672 N.E.2d at 1357 (constitutional challenge to tax "arises under" tax laws of Indiana).

The second jurisdictional prerequisite is the necessity of a State Board final determination.[5] In this case, there is nothing in the record specifically denominated as a final

---

3. See IND.CODE § 6–8.1–1–1 (1998); State v. Sproles, 672 N.E.2d 1353, 1354 n. 1 (Ind.1996).

4. See e.g., IND.CODE § 6–4.1–7–7 (1998); Department of State Revenue v. Estate of Phelps, 697 N.E.2d 506, 509 (Ind. Tax Ct.1998).

5. The Financial Institutions Tax and Motor Vehicle Excise Taxes referenced in section 12–16–14–1 are listed taxes and therefore fall under the purview of the Department of State Revenue. However, the petitioners are only challenging the property tax component of the HCI program.

determination of the State Board with respect to the petitioners' constitutional challenge to the HCI property tax levy. This, the petitioners contend, does not deprive the Court of jurisdiction for three reasons: 1) the letter dated June 5, 1998 from the Chairman of the State Board, Mr. Frank J. Sabatine, regarding the HCI property tax levy constitutes a final determination of the State Board and thus satisfies the statutory prerequisite; 2) resort to the administrative process would be futile; and 3) the administrative remedies are inadequate.

### The Letter from Mr. Sabatine

■ As described above, Mr. Frank J. Sabatine, Chairman of the State Board, sent a letter in response to correspondence from two of the petitioners. This letter, in the petitioners' view, constitutes a final determination of the State Board. The Court cannot agree. First and foremost, the Court notes that Mr. Sabatine, acting alone, cannot issue a State Board final determination. *See* IND. CODE § 6–1.1–30–1 (1998) (requiring a quorum of two members for the State Board to conduct business). Second, there is no indication that the letter from Mr. Sabatine is a final order "determin[ing] the rights of, or impos[ing] obligations on, the parties as a consummation of the administrative process." *Mills v. State Bd. of Tax Comm'rs,* 639 N.E.2d 698, 701 (Ind. Tax Ct.1994) (citing *Downing v. Board of Zoning Appeals,* 149 Ind.App. 687, 691, 274 N.E.2d 542, 544–45 (1971)). As the respondents correctly observe, the letter is merely a response to inquiries from two of the petitioners.[6] (Rept's Mem. in Supp. Mot. to Dismiss at 5).

### Is Resort to the Administrative Process Futile?

The petitioners base their futility argument on the inability of the State Board to declare the HCI system unconstitutional. Therefore, in the petitioners' view, they should be allowed to circumvent the administrative process because it does not make sense to require them to have the State Board pass on a question that is beyond its institutional competence.

■ A discussion of the petitioners' contention that resort to the administrative process would be futile must begin with an examination of the administrative process available to the petitioners. *See Mixmill Mfg. Co.,* 702 N.E.2d at 703. In their briefs, the respondents identify two possible administrative routes for the petitioners to follow: the local budget appeals process under chapter 6–1.1–17 of the Indiana Code and the refund claim process under chapter 6–1.1–26 of the Indiana Code.

Chapter 6–1.1–17 gives taxpayers the right to be heard in the municipal budget adoption process.[7] *See* IND.CODE § 6–1.1–17–3 (1998) (giving taxpayers right to notice of estimated budget); § 6–1.1–17–5 (1998) (giving taxpayers right to object to proposed budget). In addition to these rights, taxpayers, under IND.CODE § 6–1.1–17–13 (1998), may initiate an appeal to the State Board concerning a municipality's budget and the associated property tax levy. However, in order to initiate such an appeal, ten or more taxpayers must join the appeal. This requirement makes this process an unsatisfactory method of adjudicating a constitutional challenge to the HCI property tax. First, although ten or more taxpayers may decide to challenge a property tax levy under this statutory provision, they cannot be required to do so. The vindication of an individual's constitutional right cannot be made to depend on the happenstance of others asserting the same right. Otherwise, an individual's rights under the Constitution would be dependent on others suffering a denial of the same right. Second, the budget appeals process makes no provision for the refund of a tax payment. Consequently, the petitioners cannot be forced into

---

6. An informal letter from an administrative agency can, under the right circumstances, constitute evidence that a litigant has exhausted his administrative remedies or that there is "grave doubt as to the availability of the administrative remedy." *Indiana High Sch. Athletic Ass'n v. Raike,* 164 Ind.App. 169, 329 N.E.2d 66, 82 (1975); *see also Smith v. State Lottery Comm'n,* 701 N.E.2d 926, 931–32 (Ind.Ct.App.1998) (discussing *Raike*).

7. The budget adoption process includes the setting of the property tax rate for a political subdivision, a component of which is the HCI property tax levy.

the budget appeals process for the adjudication of their claims. As a result, there is no need to discuss the petitioners' futility argument with respect to the budget appeals process.

The other administrative route identified by the respondents is more promising. Under IND.CODE § 6–1.1–26–1(4)(ii) (1998), a taxpayer may file a refund claim for property taxes that the taxpayer has paid on the ground that "[t]he taxes, as a matter of law, were illegal." This refund claim is to be filed with the county auditor within three years of payment of the tax. *Id.* § 6–1.1–26–1. If the refund claim is decided adversely to the taxpayer, the taxpayer may appeal that decision first to the State Board and then to the Tax Court.[8] *See id.* §§ 6–1.1–26–2 to –4 (1998).

Because the HCI levy is a property tax, *see* IND.CODE § 12–16–14–2(a), the property tax refund process governs the adjudication of the petitioners' claim. The petitioners, however, seek to bypass this process so that they may proceed directly to this Court. In the petitioners' view, because the State Board is unable to declare the HCI statutory scheme unconstitutional,[9] *see Sproles,* 672 N.E.2d at 1360 (citing IND. CONST. art. III, § 1), requiring the petitioners to go through the administrative process is pointless.[10] *See Roberts v. State ex rel. Jackson County Bd. of Comm'rs,* 151 Ind.App. 83, 278 N.E.2d 285,

295 (1972) ("The law does not require the doing of a useless thing."). Therefore, according to the petitioners, there is no need for them to exhaust their administrative remedies in this case.

■ However, it is well within the discretion of the legislature to require litigants challenging the constitutionality of a statute to resort to the administrative process before proceeding to the judicial system.[11] *See Sproles,* 672 N.E.2d at 1360–61; *see also Winski Bros. v. Bayh,* 679 N.E.2d 912, 914 (Ind.Ct.App.1997), *trans. denied.* Where the legislature has chosen to do so, the courts may not interfere with that decision. *See Sproles,* 672 N.E.2d at 1360–61 ("[T]hese are considerations that must be addressed to the Legislature. Requiring exhaustion of remedies even in constitutional cases is well within legislative discretion."). The property tax refund scheme at issue does not distinguish constitutional challenges from all other challenges to a property tax. Accordingly, it is not for this Court to make such a distinction. *But see Richeson v. State,* 704 N.E.2d 1008 (Ind.1998) (distinguishing between attempted murder and all other attempt crimes where the statute does not). Consequently, the fact that the State Board cannot strike down the HCI property tax levy, even if it is unconstitutional, is no basis for this Court to exercise jurisdiction over this case.

8. Like the statutory scheme at issue in *Sproles,* the property tax refund process provides for eventual judicial review. *See Sproles,* 672 N.E.2d at 1361 ("Thus, taxpayers in Sproles' position [i.e., those alleged to owe Controlled Substances Excise Tax (CSET)] will eventually have their day in the Tax Court."). However, the Court notes that payment of the allegedly illegal HCI property tax is a condition precedent to obtaining judicial review under chapter 6–1.1–26. This is unlike the statutory scheme challenged in *Sproles,* which expressly allows taxpayers to have their day in court without prior payment of the allegedly illegal tax. *Sproles,* 672 N.E.2d at 1362 ("With the removal of the requirement that a tax be paid before it can be challenged in court, the adequacy of the current administrative scheme is not open to question."); *but see* IND CODE §§ 6–7–3–13, 6–7–3–19 (1998) (providing for immediate collection of CSET with some restrictions). However, the petitioners do not advance such an argument. Accordingly, the issue is waived.

9. Mr. Sabatine recognizes as much. In his letter to Mr. Montgomery and Ms. DuPey, Mr. Sabatine states, "The General Assembly has fixed the levy formula, and it is not the place of an administrative agency to overrule a statute passed by the General Assembly." Sabatine Letter at 4.

10. As the *Sproles* Court noted, there may be sound policy reasons for requiring administrative review of constitutional challenges. *Id.* at 1361. Therefore, the Court does not accept the idea that the State Board's review of the petitioners' claims would be pointless or a waste of time.

11. Such a resort to the administrative process was apparently not required in *State v. Hoovler,* 668 N.E.2d 1229 (Ind.1996). *Hoovler* involved a constitutional challenge to a county economic development income tax used to pay for an environmental cleanup in Tippecanoe County. In *Hoovler,* the tax at issue was a listed tax. *See* IND.CODE § 6–3.5–7–20 (1998).

### The Adequacy of the Administrative Remedies

The petitioners' inadequacy argument is directed towards the ultimate remedy available through resort to the administrative process. The petitioners make the generalized contention that no refund of the allegedly illegal HCI property tax levy is available. Therefore, the Court will examine the remedies available through the property tax refund process. IND.CODE § 6–1.1–26–5(a) (1998) governs property tax refunds. Under that statutory provision, any refund ordered by the State Board or this Court is required to be paid from the county general fund. In most cases involving property tax refunds, this is not problematic. In general, property taxes fund local expenditures; therefore, it is reasonable to require that any property tax erroneously collected be refunded out of the county general fund.

The HCI property tax is different from most property taxes, however. Although the HCI property tax is nominally imposed by the county fiscal body and collected as any other ad valorem property tax, the revenues generated by the HCI property tax are remitted to the State, see IND.CODE § 12–16–14–6(b), and are used to defray the expenses and obligations of the State. See id. § 12–16–14–8 (1998); see also id. § 6–1.1–2–3 (1998). In addition, as Mr. Sabatine acknowledged in his letter, the HCI property tax levy in each county is not tied to HCI expenditures in that particular county. This means that the HCI property tax is not a local tax, but rather a state tax. That local officials impose and collect the HCI property tax does not alter its essential character.[12]

This leads to the question of whether the Court may order a refund out of the county general fund if the HCI property tax levy is declared unconstitutional. If the Court is without power to do so, then the property tax refund process provides an inadequate remedy. At first glance, there would seem to be little doubt that the Court has this power. Subsection 6–1.1–26–5(a) is clear on its face: Refunds of illegally collected property taxes are to be paid out of the county general fund.

The cardinal rule in statutory interpretation is to give effect to the intent of the legislature. See Indianapolis Historic Partners v. State Bd. of Tax Comm'rs, 694 N.E.2d 1224, 1227 (Ind. Tax Ct.1998). Where the legislature has expressed this intent in clear and unambiguous terms, the Court must follow the terms of the statute, see J & J Vending, Inc. v. Department of State Revenue, 673 N.E.2d 1203, 1206 (Ind. Tax Ct.1996), unless following the terms of the statute would lead to absurd results or a result that the legislature, as a reasonable body, could not have intended. See Guinn v. Light, 558 N.E.2d 821, 823 (Ind.1990); Boushehry v. State, 648 N.E.2d 1174, 1179 (Ind. Ct.App.1995); see also Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 464, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989).

The Court concludes that the legislature could not have intended subsection 6–1.1–26–5(a) to apply to the HCI property tax levy. The State, through its enactment of the HCI program, requires county fiscal bodies to impose the HCI property tax levy at a rate prescribed by statute. The revenues generated by the tax are then forwarded to the State, thus making the HCI property tax levy a state tax. These revenues defray expenses and obligations of the State, rather than expenses and obligations of the county.[13] However, under a mechanical application of the subsection 6–1.1–26–5(a), refunds of this state tax, if it is declared unconstitutional, are to be paid out of a county general fund.

The Court cannot believe that the legislature intended to commandeer county general funds in such a manner. First of all, nowhere in the HCI legislation is there any

12. The converse is also true. A tax collected by the State may in reality be a local tax. See, e.g., Hoovler, 668 N.E.2d at 1232, 1234–35.

13. If a county's HCI property tax levy were based on actual HCI expenditures by the State in that particular county, it might be possible to argue that the expenses and obligations of the HCI program were only nominally the State's and in actuality the county's. However, the fact that a particular county's HCI property tax levy is not tied to actual expenditures in that county precludes this conclusion.

mention of chapter 6–1.1–26 or any other refund process. *See Sorenson v. Secretary of the Treasury,* 475 U.S. 851, 866–67, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (Stevens, J., dissenting). The only mention about the property tax component of the HCI program is how the tax is to be calculated and how the tax is to be collected. IND.CODE §§ 12–16–14–1 to –3. This gives rise to an inference that the legislature did not consider how HCI property tax refunds were to be handled when it enacted the HCI program. The Court is confident, however, that had the legislature intended that refunds of the HCI property tax be paid from a county general fund, the legislature would have clearly expressed this intent in explicit terms. Therefore, the legislative silence on this point coupled with the odd result of having a refund of a state tax come from county coffers, and hence from county taxpayers, leads to the conclusion that the legislature could not have intended subsection 6–1.1–26–5(a) to be followed literally in this case.

■ In addition, there are serious doubts about the legality of such a provision. The refund of a state tax is the obligation of the State. This also militates against a conclusion that the legislature intended subsection 6–1.1–26–5(a) to be followed literally in this case. By placing the duty of discharging this obligation on the county general fund, the State is actually placing the burden on the taxpayers of that county to discharge the obligation, rather than the taxpayers of the Indiana as a whole.[14] This is improper. Although special taxes may be imposed on local residents so that a local problem may be addressed without forcing the rest of the State to pay for the problem, *see Hoovler,* 668 N.E.2d at 1235, the State may not force residents of one county alone to foot the bill for an obligation of the State. *See* IND. CONST. art. I, § 23.

■ Consequently, the Court finds that it does not have the authority to order a refund from the Lake County general fund if the HCI property tax levy is declared unconstitutional. Therefore, the Court, if presented with a refund claim brought under chapter 6–1.1–26 challenging the HCI property tax levy, cannot order a refund, if the HCI property tax is declared unconstitutional, from a county general fund. Nor can the Court, if presented with a successful refund claim brought under chapter 6–1.1–26, order a refund to be paid by the State because the Court cannot engraft another remedy (i.e., allow the petitioners to collect refunds from the State) upon that statutory scheme. *See Mixmill Mfg. Co.,* 702 N.E.2d at 705 (Supreme Court may not fill gaps in statutory scheme designed by legislature). This leaves the administrative remedy as provided in the statute inadequate because the Court could not order a refund of the allegedly illegal taxes. Because the administrative remedy is inadequate, the petitioners are not required to exhaust their administrative remedies. *See Sproles,* 672 N.E.2d at 1361 n. 19. As a result, the petitioners may seek judicial review without first seeking relief under chapter 6–1.1–26.[15]

■ Now that the Court has determined that exhaustion of administrative remedies is not a prerequisite to judicial review, the Court must determine whether the case

---

**14.** The Court is aware that, under section 6–1.1–2–3, property taxes may be used for state expenditures. This means that where a property tax refund is determined to be warranted under chapter 6–1.1–26, the county may have to repay money that was already forwarded to the State. Where the refund is based on an erroneous assessment or the failure to grant an exemption, the responsibility for the refund can be rightly placed on the locality because the locality, in general, is responsible for the assessment and collection of property taxes. Therefore, in general, any errors in the assessment and collection of those taxes are likely to have been caused by local officials. This case, however, is much different. It is the property tax itself that is challenged, and local officials did not make any errors in the imposition or collection of the tax.

**15.** Where statutes provide an inadequate administrative remedy, the court is not deprived of equity jurisdiction to adjudicate the claim. *See Sproles,* 672 N.E.2d at 1358 (citing *Department of Treasury v. Ridgely,* 211 Ind. 9, 4 N.E.2d 557, 560 (1936)). This means that the court exercising judicial review in this case would not be bound by the legal remedy provided in chapter 6–1.1–26 as it would if the petitioners chose that administrative path for vindication of their claims. The court exercising judicial review could then choose an equitable remedy that would effectively vindicate the claim.

should have been brought in this Court or a court of general jurisdiction. This question seemed to have been settled by *Sproles.* The *Sproles* court stated, "Where remedies are found to be inadequate, courts of *general jurisdiction* may adjudicate the claim because the Indiana Constitution [art. I, § 12] creates a right to judicial review of administrative actions." *Id.* at 1361 n. 19 (emphasis added); *see also Hoovler,* 668 N.E.2d 1229 (reviewing circuit court's (i.e., court of general jurisdiction) determination that county economic development income tax was unconstitutional). Because the Indiana Tax Court is a court of *limited jurisdiction, Sproles* would seem to foreclose the possibility of this Court exercising jurisdiction in this case.

However, the *Mixmill* decision seems to have undermined this part of *Sproles.* In *Mixmill,* the Supreme Court held that the Indiana Tax Court had jurisdiction to issue a writ of mandamus to force local assessing officials to act in accordance with their duties under the tax laws of Indiana. The *Mixmill* court concluded that because the duty to act was imposed by the tax laws, "any suit to enforce it *must* be brought in the Tax Court." *Id.* at 704 (emphasis added). This conclusion is consonant with the idea that "the policy underlying the creation of the Tax Court was to consolidate tax-related litigation in one court of expertise," *Sproles,* 672 N.E.2d at 1357; *see also Matonovich,* 691 N.E.2d at 1329–30 (taxpayer cannot avoid Tax Court by filing action in circuit court); *Winski Bros.,* 679 N.E.2d at 915 (same), and the legislative intent to channel *all* challenges to the tax laws to the Indiana Tax Court. *See Sproles,* 672 N.E.2d at 1357.

This case is somewhat different from *Mixmill.* In *Mixmill,* the court faced a situation where the failure of county officials to act on a petition for review prevented the taxpayer from obtaining judicial review of its property tax assessment. The *Mixmill* court determined that the failure of the county officials to act conferred jurisdiction on the Tax Court to order those officials to act, "but not to direct any portended result of that action." *Mixmill Mfg. Co.,* 702 N.E.2d at 704 (citing *MHC Surgical Ctr. Assocs., Inc. v. Office of Medicaid Policy & Planning,* 699 N.E.2d

306 (Ind.Ct.App.1998); *State Highway Comm'n v. Zehner,* 174 Ind.App. 176, 366 N.E.2d 697 (1977)). The *Mixmill* decision can be seen as merely preserving the Tax Court's ability to review a case *after* it makes its way through the administrative process.

In this case, the question is whether the administrative process must be used at all. Given the Court's determination that the administrative remedies are inadequate, this case will not go through the administrative process. Therefore, the question is not if immediate judicial review is appropriate, but only where that review may be had. The *Mixmill* case does allow the Tax Court, a court of limited jurisdiction, to assume jurisdiction in one situation where the statutory prerequisites for the Court's jurisdiction could not have been met. Consequently, in light of the legislature's "inten[t] that all challenges to the tax laws … be tried in the Tax Court," *Sproles,* 672 N.E.2d at 1357, the Court concludes that the petitioners' claim must be adjudicated in the Indiana Tax Court and not a court of general jurisdiction. For these reasons, the respondents' motion to dismiss on the basis that this Court lacks subject matter jurisdiction is DENIED.

### The Standing of the Governmental Petitioners

The respondents contend that neither the Lake County Council itself, the members of the Lake County Council in their official capacities, the Lake County Board of Commissioners itself, the members of the Lake County Board of Commissioners, in their official capacities, nor Lake County [hereinafter collectively referred to as governmental petitioners] have standing in this case. In support of their contention, the respondents argue that the governmental petitioners in this case are simply attempting to assert the constitutional rights of their citizens, rather than asserting a legally cognizable injury to themselves. The respondents do not challenge the standing of the parties who are bringing this action in their individual capacities.

As the respondents point out, the standing requirement acts "as an important check on the exercise of judicial power by Indiana courts." *Pence v. State,* 652 N.E.2d

486, 488 (Ind.1995). It is a key component of the Indiana's constitutional scheme of separation of powers. *See id.* (citing IND. CONST. art. III, § 1). The standing requirement does not implicate a court's subject matter jurisdiction. *See Bielski v. Zorn,* 627 N.E.2d 880, 888 (Ind. Tax Ct.1994); *see also Harp v. State Dep't of Highways,* 585 N.E.2d 652, 659 (Ind.Ct.App.1992) (discussing difference between jurisdiction over · class of cases and jurisdiction over a particular case). Accordingly, an allegation that a party lacks standing is properly filed under Trial Rule 12(B)(6). *See City of New Haven v. Allen County Bd. of Zoning Appeals,* 694 N.E.2d 306 (Ind.Ct.App.1998) (affirming dismissal of case pursuant to Trial Rule 12(B)(6) where party does not have standing to sue), *trans. denied; Musgrave v. State Bd. of Tax Comm'rs,* 658 N.E.2d 135, 138–39 (Ind. Tax Ct.1995); *Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 594 (2d Cir.1993). A decision that a party lacks standing pursuant to Trial Rule 12(B)(6) operates as an adjudication on the merits (which, of course, the Court could not do if the Court did not have subject matter jurisdiction) as to the party seeking to invoke the court's jurisdiction.[16] *See* T.R. 41(B); *Elliott v. United Ctr.,* 126 F.3d 1003, 1004 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998); *Bleiler v. Cristwood Constr., Inc.,* 72 F.3d 13, 15 n. 1 (2d Cir. 1995).

■ In order to have standing, a party must be able to show a personal stake in the outcome of lawsuit and that the party suffered some direct injury. *See Hammes v. Brumley,* 659 N.E.2d 1021, 1029–30 (Ind. 1995) (quoting *Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind.1985)); *see also Marion County Bd. of Review v. State Bd. of Tax Comm'rs,* 516 N.E.2d 1129, 1131 (Ind. Tax Ct.1987). Accordingly, the governmental petitioners must show how the HCI program causes

them direct harm in order to have standing in this case.

■ In this case, the governmental petitioners strenuously argue that the fact that Lake County taxpayers pay an allegedly illegal tax confers standing upon them. As counsel for the respondents cogently observed at oral argument, the petitioners have confused the concept of Lake County as an entity with the concept of Lake County as the sum of its citizens. (Oral Arg. Tr. at 43). Assuming arguendo that Lake County· taxpayers are subject to an illegal tax does not mean that the political subdivision known as Lake County is suffering a legally cognizable injury.

■ In addition, it is well-settled that "a county has no sovereign powers, and cannot act as *parens patriae,* asserting the claims of its residents." *Bd. of Comm'rs v.. Kokomo City Plan Comm'n,* 263 Ind. 282, 330 N.E.2d 92, 101 (1975). Therefore, Lake County may not stand in the shoes of its citizens to vindicate their rights. The same holds true for the other governmental petitioners because they too are without sovereign powers. Accordingly, the Court finds that the governmental petitioners lack standing to claim that the HCI property tax levy is unconstitutional.[17]

The cases cited by the petitioners do not require a different result. In *State ex rel. State Board of Tax Commissioners v. Marion Superior Court,* 271 Ind. 374, 392 N.E.2d 1161 (1979), the Indiana Supreme Court held that the Lake County Council had standing to challenge the State Board's determination of the overall property tax rates of Lake County. In arriving at its decision, the court found that the Lake County Council had a vital interest at stake, namely whether it could force the State Board to approve added levies that the Lake County Council wished to impose. In that case, the Lake County Council was seeking to vindicate its rights with respect to its power to set the levy rate.

---

**16.** Of course, when a Trial Rule 12(B)(6) motion is granted, the pleading may be amended as of right pursuant to Trial Rule 15(A) within ten days of the service of the dismissal. *See* T.R. 12(B).

**17.** In light of the Court's disposition of the issue of the standing of the governmental petitioners,

the Court finds it unnecessary to discuss the standing of the members of a representative body to maintain suit on behalf of that body. Recently, the U.S. Supreme Court discussed this very issue in *Raines v. Byrd,* 521· U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).

The court stated, "It would be anomalous indeed for us to hold that a county or its officials cannot resolve in a court of law a bona fide dispute with a state agency over the application of a state statute." *Id.* at 1165. The court also relied on the fact that there is a constitutional right to review of administrative actions. *Id.* (citing *Warren v. Indiana Tel. Co.*, 217 Ind. 93, 26 N.E.2d 399 (1940)).

In *Bielski v. Zorn*, also cited by the petitioners, this Court followed the holding in *State Board of Tax Commissioners v. Marion Superior Court.* In arriving at the conclusion that certain governmental petitioners had standing to challenge the constitutionality of Indiana's property tax system, this Court in *Bielski* concluded that the governmental petitioners in that case were challenging the overall property tax assessment [18] in a particular town, and by extension, the State of Indiana. This case is much different. The governmental petitioners here are merely attempting to vindicate the rights of the taxpayers they represent. Under *Kokomo City Plan Commission*, this is forbidden.

The Court acknowledges that the HCI property tax levy involves the rate of property taxation in Lake County. However, this does not bring this case into the ambit of *State Board of Tax Commissioners v. Marion Superior Court* or *Bielski.* With respect to the rate of property taxation, the amount of the HCI property tax levy is fixed by statute. The fiscal body of Lake County has no discretion in setting the levy rate, and its function with respect to that levy rate is ministerial only. Additionally, there is no allegation that the rate in this case was improperly calculated by the State Board. The only question here is the constitutionality of the HCI property tax levy. Therefore, this case, unlike *State Board of Tax Commissioners v. Marion Superior Court* and *Bielski,* does not implicate the interest of the fiscal body in setting the rate of property taxation.

However, this is not the end of the standing issue. Although Lake County may not assert the rights of its citizens, Lake County has a legally cognizable interest in this case. It has an interest in protecting the Lake County general fund from being commandeered by the State to pay for refunds of the HCI property tax levy, if that levy is declared unconstitutional. In addition, the Lake County general fund may be overwhelmed by refund claims if the HCI property tax levy is declared to be unconstitutional.[19] These possibilities give Lake County a direct legal interest in the outcome of this case, thereby conferring Lake County with standing.[20]

### CONCLUSION

For the aforementioned reasons, this Court DENIES the respondents' motion to dismiss for lack of subject matter jurisdiction. This Court also DISMISSES the above named governmental petitioners pursuant to Trial Rule 12(B)(6) with the exception of Lake County. Lake County is hereby given leave to amend its complaint within thirty days of this Court's ORDER. The respondents are hereby ORDERED to file their answer within sixty days of this Court's ORDER.

IT IS SO ORDERED.

---

18. The assessment of all the property within a political subdivision affects the rate of property taxation within that political subdivision. *See Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 378 n. 18 (Ind. Tax Ct.1997), *aff'd in part, rev'd in part*, 702 N.E.2d 1034 (Ind.1998).

19. Ordinarily, the fact that a property tax refund would be paid from the county general fund would not allow the county to join in an original tax appeal. Of course, if the HCI property tax levy is declared unconstitutional and subsection 6-1.1-26-5(a) governs the refunds, the Lake County general fund may not be able to satisfy all of the refund claims. This would leave the remedy "adequate on paper but not in practice." *Sproles*, 672 N.E.2d at 1362 n. 20. In addition, if the HCI property tax levy is declared unconstitutional, Lake County taxpayers, if refunds are to be paid from the Lake County general fund, will be, in essence, paying themselves after the revenues from Lake County's HCI property tax levy have long since been spent.

20. If Lake County remains in this case, then its interest in the proceedings will necessarily be adverse to the taxpayers. This may raise questions as to the ability of petitioners' counsel to continue in their representation. *See* IND R. PROF. COND. 1.7, 1.9.