ISPAT INLAND, INC., Petitioner,

v.

**STATE BOARD OF TAX COMMISSIONERS; Paul Karras, in his official capacity as Lake County Assessor; Board of Commissioners of Lake County Indiana; Frances Dupey, Rudolph Clay, and Gerald Scheub, in their official capacities as members of the Lake County Board of Commissioners; and Lake County, Indiana, a political subdivision of the State of Indiana, Respondents.**

No. 49T10–0107–TA–74.

Tax Court of Indiana.

Nov. 7, 2001.

---

⊛→319(1)

Francina A. Dlouhy, James H. Ham III, Baker & Daniels, Indianapolis, Indiana, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Karen L. Hsu, Deputy Attorney General, Indianapolis, Indiana, Charles C. Meeker, Parker, Poe, Adams & Bernstein, Raleigh, North Carolina, Brian P. Popp, Laszlo & Popp, Merrillville, Indiana, and John S. Dull, Lake County Attorney, Crown Point, Indiana, Attorneys for Respondents.

FISHER, J.

Ispat Inland, Inc. (Ispat) filed an original tax appeal challenging a decision of the State Board of Tax Commissioners (State Board) directing the Lake County Assessor (Assessor)[1] that he could lawfully disclose Ispat's confidential information to Tax Management Associates, Inc. (TMA), a North Carolina accounting firm hired by Lake County to conduct an audit of Ispat's personal property tax returns for the 2000 tax year.[2] Ispat moves this Court to enjoin the Assessor from disclosing confidential information to TMA, arguing that the delegation of its duty to audit personal property tax returns to TMA or any third party is unlawful.[3] The State Board moves this Court to dismiss Ispat's case for lack of subject matter jurisdiction.

The Court restates the relevant issues as follows:

I. Whether this Court has subject matter jurisdiction over Ispat's appeal; and

II. Whether this Court should enjoin the Assessor from delegating its

---

1. The Court's reference to "the Assessor" also encompasses the other Lake County respondents.

2. The parties dispute which years are open to the audit. Ispat claims that only the 2000 assessment year is at issue, while Lake County argues that the years are 1998–2000. This issue is reserved for another day.

3. Ispat also seeks to enjoin the Assessor from disclosing its confidential information to TMA

on the grounds that TMA is not an "employee" to whom the Assessor can disclose such information under Indiana Code § 6–1.1–35–9. Because this Court's finding that the legislature did not expressly authorize the Assessor to delegate its personal property auditing duties to TMA is dispositive, *see infra,* the Court need not address the issue of whether TMA is an "employee" under Indiana Code § 6–1.1–35–9.

personal property auditing duties to a third party such as TMA.

For the reasons stated below, the Court DENIES the State Board's motion to dismiss and GRANTS Ispat's motion for injunction.

## FACTS AND PROCEDURAL HISTORY

Ispat owns and operates an integrated steel mill in Lake County.[4] In June 2000, Ispat filed its business personal property return, reporting for assessment its tangible personal property located in its steel mill.

On November 15, 2000, the Lake County Board of Commissioners contracted with TMA[5] as a "consultant" to perform "audits to verify the accuracy of business taxpayers' listings of personal property for ad valorem taxation." (Pet'r Injunction Ex. 3 at 5.) Specifically, under the contract, TMA was to conduct an audit of Ispat's business personal property tax returns.[6]

In early February 2001, the Assessor's office contacted Ispat and requested that Ispat contact Tom Tucker, an employee of TMA. Ispat's counsel called Tucker, who stated that he had a copy of Ispat's 2000 personal property return and that he wanted to schedule an audit of Ispat. On February 12, 2001, Tucker sent a list of requested audit items to Ispat's counsel, some of which are considered confidential under Indiana Code § 6-1.1-35-9(a).[7]

On February 22, 2001, Ispat's counsel wrote to the Assessor, questioning TMA's authority to conduct an audit. In his response to Ispat, the Assessor acknowledged that auditors such as TMA were not referenced in the confidentiality statute, but nonetheless, TMA would treat all Ispat's information as confidential.

Around that same time, the Assessor also sought the State Board's position on Lake County's ability to contract with third parties and disclose confidential information to them. Marilyn Meighen, a senior administrative law judge with the State Board, responded by stating that local government officials could contract with third parties to conduct their official duties and could therefore disclose confidential information to those third parties in relation to the contracted job. On March 12, 2001, the Assessor informed Ispat that it had until March 14, 2001, to schedule an audit with TMA.

On March 14, 2001, Ispat filed a petition with the State Board requesting that, under Indiana Code § 6-1.1-35-1[8], it interpret the property tax laws and instruct the

---

4. Ispat purchased the steel mill from Inland Steel Company in July 1998.

5. TMA is headquartered in Charlotte, North Carolina. The contract provided that TMA would be paid on an hourly basis.

6. Lake County wanted TMA to audit Ispat's personal property return because it claims that "[m]achinery and equipment of large manufacturers typically compromise sixty percent (60%) to seventy-five percent (75%) of a business's assets[;]" however, Ispat "appears to have allocated less than forty percent (40%) of the purchase price [of Inland Steel] to machinery and equipment." (Resp't Lake County Br. at 2.)

7. Indiana Code § 6-1.1-35-9 states that "[a]ll information which is related to earnings, income, profits, losses, or expenditures" that is given to or acquired by an assessing official or employee is confidential. IND.CODE § 6-1.1-35-9. See also IND. ADMIN.CODE 50 r. 4.2-15-11(a) (1996).

8. Among the prescribed duties of the State Board are: "(1) interpret the property tax laws of this state; [and] (2) instruct property tax officials about their taxation and assessment duties and ensure that the county assessors, township assessors, and assessing officials are in compliance with section 1.1 of this chapter[.]" IND.CODE § 6-1.1-35-1.

Assessor that: (1) his office could not conduct an audit of Ispat's 2000 personal property return because the statute of limitations to change the assessment had expired; (2) the confidentiality statute precluded his office from disclosing Ispat's confidential information to TMA or TMA's employees; and (3) he may not delegate his official duties regarding business personal property taxes to a third party such as TMA. Both Ispat and Lake County filed briefs and reply briefs with the State Board.

On July 13, 2001, the State Board issued its "Decision of the State Board of Tax Commissioners," which was signed by the State Board Chairman and its two Commissioners. (Pet'r Injunction Ex. 1 at 1, 11.) The State Board concluded that the Assessor could hire a third party such as TMA to assist with the personal property audits because the "practical reality [is] that local assessing officials lack sufficient expertise among their paid, full-time staff to perform some auditing and similar tasks pertaining to personal property assessment." [9] (Pet'r Injunction Ex. 1 at 9–10.)

On July 30, 2001, Ispat filed this original tax appeal. Thereafter, Ispat moved this Court to enjoin the Assessor from disclosing Ispat's confidential information to TMA and from delegating his personal property auditing authority to TMA. The State Board moved to dismiss Ispat's case for lack of subject matter jurisdiction. The Court held a hearing on the both motions and took the matters under advisement. Additional facts will be supplied as needed.

**9.** The State Board also found that TMA could be considered an "employee" of the Assessor for the purposes of the confidentiality statute, thereby allowing the Assessor to disclose Ispat's confidential information to TMA. (Pet'r Injunction Ex. 1.)

## ANALYSIS AND OPINION

### Standard of Review

▆▆▆▆▆ The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

### Discussion

#### I. Motion to Dismiss

The State Board argues that this Court does not have subject matter jurisdiction over Ispat's case because the State Board's "Decision" does not constitute a final determination. (Resp't State Board's Motion to Dismiss Br. at 3.) Specifically, the State Board contends that the decision is not a final determination because: (1) the phrase "Final Determination" is not present on the decision; (2) the State Board issued the decision under its statutory authority to interpret tax laws,[10] which is independent from the statutes that govern the procedures for the State Board to issue a final determination;[11] and (3) the State Board's decision was "merely an advisory opinion" sent in re-

**10.** *See* IND.CODE § 6–1.1–35–1(1).

**11.** *See* IND.CODE §§ 6–1.1–15–3, –4, and –5.

sponse to Ispat's request. (Resp't State Board's Motion to Dismiss Br. at 3–5.)

■■■ Subject matter jurisdiction is "the power of a court to hear and determine the general class of cases to which the proceedings before it belong." *Musgrave v. State Bd. of Tax Comm'rs*, 658 N.E.2d 135, 138 (Ind. Tax Ct.1995). A determination as to whether subject matter jurisdiction exists "depends on whether the type of claim advanced by the petitioner falls within the general scope of authority conferred upon the court by constitution or statute." *Id.* This Court's authority to hear and determine a case is set forth in Indiana Code § 33-3-5-2, which states that the Tax Court has "exclusive jurisdiction over any case that arises under the tax laws of [Indiana] and that is an initial appeal of a final determination" made by the State Board. IND.CODE § 33-3-5-2.

■■■ Ispat's tax appeal meets both jurisdictional requirements. First, Ispat's appeal "arises under" Indiana tax law. A case "arises under" Indiana tax law if: "(1) an Indiana tax statute creates the right of action; or (2) the case principally involves collection of a tax or defenses to that collection." *Lake County Council v. State Bd. of Tax Comm'rs*, 706 N.E.2d 270, 274 (Ind. Tax Ct.1999), *rev'd on other grounds by* 730 N.E.2d 680 (Ind.2000). Ispat not only challenges the legality of the Assessor's authority to delegate his personal property auditing duties to a third party, but the Assessor's authority to disclose confidential information from personal property tax returns under Indiana Code § 6-1.1-35-9 and the statutory time limit for the Assessor to change a personal property assessment, as well. As the parties do not dispute, this case "arises under" Indiana tax law.

■■■ Second, Ispat appeals from a final determination of the State Board. A final determination is an order that "determine[s] the rights of, or impose[s] obli-

gations on, the parties as a consummation of the administrative process." *Mills v. State Bd. of Tax Comm'rs*, 639 N.E.2d 698, 701 (Ind. Tax Ct.1994); *see also Lake County Council*, 706 N.E.2d at 275; *Matonovich v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1093, 1095 (Ind. Tax Ct.1999), *review denied.*

The State Board's reliance on *Lake County Council* to support its argument that its "Decision" was not a "Final Determination" is without merit. In *Lake County Council*, two taxpayers sent letters to the State Board Chairman expressing their concern about the Health Care for the Indigent (HCI) property tax levy and requested a refund for any HCI overpayment. *Lake County Council*, 706 N.E.2d at 273. The State Board Chairman responded to the taxpayers, stating the State Board had no power to change the HCI statutory formula and no power to issue any HCI refunds. *Id.* The taxpayers appealed to this Court claiming that the Chairman's letter constituted a "final determination." *Id.* at 274–75. This Court found that the Chairman's letter did not constitute a "final determination" because the Chairman could not act alone in issuing a State Board final determination. *Id.* at 275 (stating that Indiana Code § 6-1.1-30-1 requires "a quorum of two members for the State Board to conduct business"). This Court also found that the Chairman's letter was not a "final determination" because the letter did not determine the rights or impose obligations on the parties ending the administrative process. *Id.*

Here, the State Board's "Decision" was signed by all three commissioners of the State Board. (Pet'r Injunction Ex. 1 at 11.) In this decision, the State Board determined that the Assessor had the right to disclose Ispat's confidential information to TMA because he had the right to delegate his personal property auditing

duties to TMA and because TMA could be construed an "employee" under the confidentiality statute. (Pet'r Injunction Ex. 1 at 10–11.) Therefore, Ispat was obligated to either allow the Assessor to disclose its confidential information to TMA or directly turn over its confidential information to TMA. The State Board's "Decision" determined rights and imposed obligations on the parties, and there is no other administrative proceeding for Ispat to pursue regarding its challenge.

The State Board's "Decision" constitutes a State Board final determination for purposes of Indiana Code § 33–3–5–2, thereby making judicial review of the State Board's decision available to Ispat. Consequently, this Court has subject matter jurisdiction over Ispat's claims, and the State Board's motion to dismiss is DENIED.

## II. Injunction [12]

Ispat seeks to enjoin the Assessor from unlawfully delegating his auditing authority to TMA. Ispat has the burden of proving, by a preponderance of the evidence, that it is entitled to the injunction. *Union Township School Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 189 (Ind.Ct. App.1998), *trans. denied.*

When exercising its discretion to grant or deny an injunction, this Court must consider whether: (1) Ispat's remedies at law are inadequate, thus causing irreparable harm if the injunction is not granted; (2) Ispat has demonstrated that it has succeeded on the merits of its claim; [13] (3) the threatened injury to Ispat if an injunction is not granted outweighs the threatened harm the grant of an injunction may inflict on the Assessor; and (4) the public interest would be disserved by the grant of the injunction. *See Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.,* 751 N.E.2d 702, 712 (Ind.Ct. App.2001); *Union Township School Corp.,* 706 N.E.2d at 189.

However, if the acts that Ispat seeks to enjoin are unlawful, Ispat need not make a showing of irreparable harm or a balance of the hardship in its favor. *See Ferrell,* 751 N.E.2d at 713; *Union Township School Corp.,* 706 N.E.2d at 192. Therefore, this Court must first determine whether the Assessor's act of delegating his auditing duties to TMA was lawful.[14]

### Authority to Delegate

Ispat argues that the Assessor has no authority "to delegate to TMA the task of ... verifying the accuracy of personal property tax returns." (Pet'r Injunction Br. at 13.) [15] On the other hand, the As-

---

**12.** Originally, Ispat sought a *preliminary* injunction to enjoin the Assessor from disclosing confidential information to TMA and from unlawfully delegating his auditing authority to TMA. During the injunctive hearing, however, the parties agreed that these issues were being litigated fully before the Court and could therefore be determined with finality. (Trial Tr. at 26, 42–43, 65.) Consequently, this Court will treat Ispat's motion as one for a *permanent* injunction. *See Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.,* 751 N.E.2d 702, 713 (Ind.Ct.App.2001) (noting a permanent injunction is appropriate to be issued upon a final determination).

**13.** In a *preliminary* injunction case, however, the plaintiff would be required to show "at least a reasonable likelihood of success at trial by establishing a prima facie case." *Union Township School Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 189 (Ind.Ct.App.1998), *trans. denied; Ferrell,* 751 N.E.2d at 713.

**14.** An analysis of whether the Assessor's act was lawful also encompasses the analysis of the second factor of injunctive relief: whether Ispat has demonstrated that it has succeeded on the merits.

**15.** Ispat does not dispute the fact that the Assessor can conduct an audit of Ispat's personal property returns but instead argues that the legislature has not granted the Assessor authority to delegate that duty to a third party.

sessor, relying on the State Board's final determination, argues that Indiana Code § 6–1.1–36–12 grants him authority to contract with TMA and delegate his authority to audit personal property tax returns. (Resp't Lake County Injunction Br. at 10.) The Court disagrees with State Board and the Assessor.

Indiana Code § 6–1.1–36–12 states "[i]f a board of county commissioners enters into a contract for the discovery of property which has been omitted from assessment, the investigation and collection expenses shall be deducted from the gross amount of taxes collected on the omitted property which is so discovered." IND. CODE § 6–1.1–36–12. In its final determination, the State Board concluded that Indiana Code § 6–1.1–36–12 permitted counties to contract with third parties to find "omitted and undervalued" property. (Pet'r Ex. 1 at 5.) The State Board misread Indiana Code § 6–1.1–36–12.

■ The language of that statute does not refer to "undervalued" property. IND. CODE § 6–1.1–36–12. Rather, the plain language of that statute refers to the county contracting for the discovery of "omitted" property only. *Id.* Moreover, it does not give the Assessor authority to contract with a third party to investigate property, such as Ispat's, that has already been reported for assessment.

There is no statutory provision that explicitly allows the Assessor to delegate his auditing authority of "personal" property tax returns to a third party. While the legislature has granted counties authority to employ third party "professional appraisers" or "technical advisors" to assist in the general reassessment of *real* property,[16] the legislature has not granted counties any equivalent authority to employ third parties to assist the county with auditing *personal* property tax returns.

Therefore, the Court finds that the well-established statutory construction maxim *expressio unius est exclusio alterius,* which means that the enumeration of certain things in a statute implies the exclusion of all others, is applicable here. *Memorial Hosp. v. Szuba,* 705 N.E.2d 519, 523 (Ind.Ct.App.1999). Consequently, the legislature's specific references in other portions of the Act to a county's authority to delegate its duties to third parties in real property assessments, implies that the legislature intended to exclude such authority to delegate in the personal property realm. Thus, the Court finds that the legislature did not intend for a county to delegate its auditing duties for *personal* property tax returns to a third party. *See Brandmaier v. Metropolitan Dev. Comm'n of Marion County,* 714 N.E.2d 179, 181 (Ind.Ct.App.1999) (finding that where ordinance specifically lists use in one category but not another, use will be assumed permitted only in category where mentioned), *trans. denied; Skrzypczak v. State Farm Mut. Ins. Co.,* 668 N.E.2d 291, 295 (Ind.Ct. App.1996) (noting the rule of statutory construction that an Act's statutes are read as a whole when attempting to ascertain legislative intent).

■ Finally, the State Board's attempt to justify its decision that the Assessor could delegate its auditing authority to TMA because of the "practical reality" that the Assessor and his staff lack the necessary expertise to perform an audit of personal property tax returns is without merit. (Pet'r Injunction Ex. 1 at 9–10.) The State Board cannot rewrite statutes and give powers to the Assessor that are not expressly provided. *Matonovich,* 705 N.E.2d at 1096 (noting that "[a]dministrative boards, agencies and officers have no common law or inherent powers, but only such authority as is conferred upon them by statutory enactment"). Such powers to

16. *See* IND.CODE §§ 6–1.1–4–16, –17, –18.

delegate personal property auditing duties can only be granted by the legislature, "not the exigencies of any particular situation." *Id.* at 1099.

Because the legislature has not granted county officials authority to delegate their auditing or assessment duties to a third party, the Assessor's delegation of his duty of auditing Ispat's personal property tax returns to TMA was unlawful. Accordingly, to have an injunction granted against the Assessor, Ispat is only required to show that it has demonstrated that it has succeeded on the merits and that the public interest would not be disserved by the grant of the injunction. *See Ferrell,* 751 N.E.2d at 713; *Union Township School Corp.,* 706 N.E.2d at 192. By showing that the Assessor did not have the authority to delegate his personal property auditing duties to TMA, Ispat has shown success on the merits. Thus, this Court now turns to whether the public interest would be disserved by the grant of the injunction.

Ispat argues that granting the injunction would be in the public interest because public policy considerations do not favor the unauthorized delegation of governmental duties. Ispat also contends that the injunction would "assure[ ] taxpayers [that] their financial data will be held confidential" and will not be "disclosed to unauthorized persons." (Pet'r Injunction Br. at 20.) The Assessor argues, however, that the public interest would be harmed by the granting of the injunction because it would allow Ispat to avoid altogether an audit of its personal property return.

The Court does not find the Assessor's argument persuasive. Although the As-

sessor does not have the authority to delegate his auditing duties to a third party, the Assessor's office itself may conduct the audit of Ispat's personal property tax returns.[17] Indeed, Ispat has agreed to give its confidential information to the Assessor and cooperate in the audit of its returns as long as the Assessor or an authorized party conducts the audit. Therefore, the audit of Ispat's returns does not need to be delayed, and the public interest would not be disserved.

In summary, Ispat has shown success on the merits and that the public interest would not be disserved by the grant of an injunction. Therefore, Ispat has met the prerequisite factors for a permanent injunction. Accordingly, this Court GRANTS Ispat's motion for injunction.

## CONCLUSION

For the aforementioned reasons, the Court finds that it has subject matter jurisdiction over Ispat's case and finds that Ispat has met the prerequisites for the issuance of a permanent injunction. It is, therefore, ADJUDGED, ORDERED, AND DECREED that the State Board's motion to dismiss is DENIED and that the Assessor and other Lake County Respondents are ENJOINED from delegating to TMA or any other third party any personal property authority or duties of their respective offices with respect to Ispat. This case will be set for hearing to address the statute of limitations issue raised in Ispat's original tax appeal petition.

---

17. While this Court is sympathetic to the Assessor's plight, it does not influence this Court's decision. There are other avenues by which to complete the audit. For example, Indiana Code § 6–1.1–14–3 provides that the State Board "shall review the business per-

sonal property returns of taxpayers who report a total assessed value of ... $15,000 or more."