STATE BOARD OF TAX COMMIS-
SIONERS, et al., Appellants
(Respondents Below),

v.

Troy MONTGOMERY, et al., Appellees
(Petitioners Below).

No. 45S00–9906–TA–340.

Supreme Court of Indiana.

June 27, 2000.

Jeffrey A. Modisett, Attorney General of
Indiana, Jon Laramore, Deputy Attorney
General, Indianapolis, Indiana, Attorneys
for Appellants.

Peter L. Benjamin, Gerald M. Bishop,
Merrillville, Indiana, John S. Dull India-
napolis, Indiana, Attorneys for Appellees.

## ON PETITION FOR
## INTERLOCUTORY
## APPEAL

BOEHM, Justice.

The petitioners in this case are Lake
County, on its own behalf and on behalf of

property owners in that county, the Lake County Council, the Board of Commissioners of Lake County, and several individual members of the Council or the Board who seek to sue in their official capacities and as taxpayers owning property in Lake County. All petitioners brought suit in the Indiana Tax Court against the Indiana State Board of Tax Commissioners, seeking a declaratory judgment that the Health Care for the Indigent program ("HCI") violates Article 10, Section 1 and Article 1, Section 23 of the Indiana Constitution. The Tax Court held that it had subject matter jurisdiction, despite the State Board's contention that the taxpayers had not exhausted their administrative remedies. That issue was certified for interlocutory review, and we granted the State Board's Petition for Review to address whether under these circumstances the taxpayers must first exhaust administrative remedies. We hold that the taxpayers must first exhaust the administrative remedy of requesting a refund, and that the Tax Court is without jurisdiction because no petitioner seeks review of a final order of the State Board.

**Factual and Procedural Background**

HCI was first enacted in 1986 and recodified in 1992 at Indiana Code §§ 12–16–2–1 to 12–16–16–3. It is designed to provide emergency medical care to indigent patients who do not qualify for Medicaid benefits. Before 1986, the counties bore all responsibility for indigent health care. HCI transferred the administration of indigent health care to the State and imposed an "HCI tax levy" to fund it. The State Board of Tax Commissioners is required to "review each county's property tax levy under this chapter and ... enforce the requirements of this chapter with respect to that levy." Ind.Code § 12–16–14–4 (1998). The levy is imposed as a property tax, but unlike the general property tax levy,[1] the amount of the HCI levy for each county is statutorily prescribed as last year's levy increased by the percentage of growth in assessed value of all property in the state.[2] Certain statutory limits on property tax rates may be exceeded "[t]o meet the requirements of the county hospital care for the indigent fund." Id. § 6–1.1–18–3(7).

The Act provides for the establishment of an HCI fund in each county. Each county fund's balance is transferred monthly to a state fund. The initial HCI levy for each county was set at the average over 1984–86 of its indigent hospital care expenditures, with certain adjustments not relevant here.

The petitioners contend that the statutory formula for setting the HCI tax levy has resulted in a wide disparity between the contribution of Lake County residents to the HCI state fund and Lake County's percentage of statewide assessed value. According to petitioners, even though the assessed value of property in Lake County is 6.5% of the statewide assessed value, 37% of the HCI tax levy is imposed on Lake County.

Two taxpayers who are parties to this action, Troy Montgomery and Frances Du-

---

1. "Levy" is a term used to describe the aggregate dollar amount of property taxes imposed to fund a given operation of local government. The levies imposed under the general property tax are subject to review by the State Board. See Ind.Code §§ 6–1.1–17–1 to 20 (1998).

2. This description is not precisely correct, but is adequate for purposes of this opinion and is hopefully more easily understood than the statutory formulation:

Each county shall impose a hospital care for the indigent property tax levy equal to the product of:
(1) the hospital care for the indigent property tax levy imposed for taxes first due and payable in the preceding year; multiplied by
(2) the statewide average assessed value growth quotient, using all the county assessed value growth quotients determined under IC 6–1.1–18.5–2 for the year in which the tax levy under this section will be first due and payable.
Ind.Code § 12–16–14–3 (1998).

Pey,[3] directed a letter to the State Board in which they posed four questions:

(1) Is the State Tax Board of Commissioners willing to voluntarily adjust and revise the current funding formula for the HCI tax levy to assure that Lake County health care providers substantially receive the benefit of tax dollars that are paid in?

(2) If the answer to question number one is in the affirmative, please further state the mechanism and timetable regarding same.

(3) Please itemize where the distribution of the remaining sum of approximately $42,000,000.00 paid in by Lake County is allocated?

(4) On behalf of Lake County taxpayers, we are requesting a refund of the HCI overpayment for the past three (3) years. Members of the County council have filed timely objections over the years regarding our inflated HCI tax levy. Please advise us regarding your position to voluntarily repay to Lake County the amount of overpayment into the HCI fund for the past three (3) years.

The Chairman of the State Board, Frank J. Sabatine, was sympathetic to the concerns expressed by Montgomery and DuPey, but he responded that, "there is nothing the Board can do to voluntarily adjust the amount of Lake County's HCI property tax levy." He described the State Board's role as "ministerial" in nature, and told Montgomery and DuPey

that the State Board had no discretion either to adjust the formula for assessing the HCI tax levy, or to order a refund of taxes for the alleged overpayment.

Sabatine expressed the State Board's willingness to "review the funding and reimbursement formulas[4] to determine if there are ways to improve the HCI program." He also directed a letter to the Citizens' Commission on Taxes, asking it to consider Lake County's concerns in its recommendations to the General Assembly on proposals to remove the HCI tax levy from the property tax. Sabatine explained to Montgomery and DuPey that some of the apparent inequity of the HCI program is counterbalanced by its interaction with Medicaid.[5] He concluded that any "concerns regarding inequities in the current levy calculation ... must be addressed to the General Assembly and not to this agency."[6]

The petitioners, along with the Lake County Council and Board of Commissioners, then brought suit in the Indiana Tax Court against the State Board. They allege that the HCI tax levy violates the Indiana Constitution, specifically, Article 1, Section 23, the Privileges and Immunities Clause; and Article 10, Section 1, which provides for a uniform and equal rate of property assessment and taxation. They sought a declaration that the formula for calculating the tax levy was unconstitutional. They contended that jurisdiction of the Tax Court was conferred by the Sabatine letter, which constituted a "final determination" within the meaning of the Tax

3. Montgomery is a member of the Lake County Council and DuPey is a member of the Lake County Board of Commissioners.

4. Counties receive money back from the HCI state fund to reimburse them for the cost of indigent care.

5. Sabatine emphasized that the HCI program and Medicaid funds are interrelated. The State Board makes the same point in its Brief to this Court. According to the Board, HCI funds have been used to leverage federal Medicaid funds, a significant portion of which go to Lake County. Citing *Kerr v. Perry School*

*Township,* 162 Ind. 310, 70 N.E. 246 (1904), petitioners respond that the relationship between the HCI levy and Medicaid is irrelevant because their constitutional claims are based on provisions dealing with the assessment of taxes that do not relate one way or the other to benefits received from tax-supported programs.

6. Sabatine reiterated in the letter to the Chairman of the Citizens' Commission on Taxes that "the HCI tax levy formula is mandated by statute, so there is no action the Board can take at this time."

Court's jurisdictional statute. The State Board responded with a motion to dismiss, contending that the governmental entities lacked standing and the taxpayers were barred by the doctrine of exhaustion of remedies because they had neither objected to the levy nor claimed a refund pursuant to procedures set forth in the tax code.

The Tax Court concluded that the Sabatine letter did not constitute a final determination conferring subject matter jurisdiction, but nevertheless concluded that the claim was proper because administrative remedies for challenging the HCI levy were inadequate and therefore the parties were excused from pursuing them. *See Lake County Council v. State Bd. of Tax Comm'rs*, 706 N.E.2d 270, 275–77 (Ind.Tax 1999). The Tax Court first held that the taxpayers' ability to object to the tax levy was an insufficient remedy because an objection could be filed only by a group of ten taxpayers, and the adjudication of a constitutional claim could not be made to depend on agreement by nine others to bring the claim. *See id.* at 275–76. The Tax Court viewed the option of filing a claim for a refund as "more promising," but it nevertheless concluded that the refund process was also impractical. If a refund were ordered as to amounts remitted from the county fund to the State, the Tax Court surmised, it would have to be paid out of the county coffers, even though the ultimate recipient of the funds from the county tax was the State. *See id.* at 277–78. The Tax Court then noted the absence of any mention of a refund process in the HCI statute and concluded that the legislature did not intend the county to be commandeered into granting refunds of money it had forwarded to the State. In the Tax Court's view, the legislature "could not have intended" the refund provisions of the property tax to apply to the HCI tax levy. *Id.* at 277. The Tax Court then concluded that jurisdiction properly lay with the Tax Court. *See id.* at 278–79. It also ruled that the governmental entities, with the exception of Lake County itself, had no standing to contest the constitutionality of the HCI levy. *See id.* at 279–81.

Lake County was deemed a proper party to the declaratory judgment action because it had a cognizable interest in the lawsuit. If the petitioners were successful, the county would be required both to fund and also to administer the refund process. *See id.* at 281.

The State Board sought rehearing, arguing that because Lake County could seek reimbursement from the State for any refunds it would be forced to pay, the taxpayers' remedies were adequate and exhaustion should not be excused.[7] In a second opinion,[8] the Tax Court again concluded that it had subject matter jurisdiction and that petitioners' administrative remedies were inadequate and exhaustion was excused. *See Montgomery v. State Bd. of Tax Comm'rs*, 708 N.E.2d 936 (Ind. Tax 1999). The Tax Court also concluded that reimbursement was too speculative. *See id.* at 938. The Tax Court subsequently certified its opinions for interlocutory review by this Court, and this appeal followed.

The State Board argues that: (1) the taxpayers failed to exhaust their adminis-

---

**7.** The State Board argued that the County could seek reimbursement from the State pursuant to Indiana Code § 6–1.1–27–6(b), which provides for refunds from the state treasurer for "improper or erroneous payments" by a county, and also pursuant to Indiana Code § 6–1.1–26–5(b): "[T]he county auditor shall deduct the amount refunded from the gross tax collections of the taxing units for which the refunded taxes were originally paid and shall pay the amount so deducted into the general fund of the county."

**8.** The Tax Court issued its original opinion on January 19, 1999, *see Lake County,* 706 N.E.2d at 270, and granted reconsideration in view of our intervening modification of *State Board of Tax Commissioners v. Mixmill Manufacturing Co.,* 702 N.E.2d 701 (Ind.1998), as modified Feb. 5, 1999. *See Montgomery,* 708 N.E.2d at 936.

trative remedies and they are not excused from pursuing these remedies on grounds of futility; (2) even if exhaustion were not required, the taxpayers still had no final determination by the State Board and therefore jurisdiction was improper in Tax Court; and (3) Lake County lacks standing to assert this claim against the State Board.

## I. Exhaustion of Administrative Remedies

In *State v. Sproles*, as here, the taxpayer sought a declaration that the tax at issue was unconstitutional. *See* 672 N.E.2d 1353, 1354–55 (Ind.1996). *Sproles* held that the taxpayer there could not circumvent administrative remedies and challenge the constitutionality of a tax directly in court, even if the administrative agency to which the taxpayer appeals is without the power to grant the exact remedy the taxpayer seeks. *See id.* at 1358–61. Rather, a taxpayer must first exhaust administrative remedies. *See id.*

■ The reasons for requiring a party to seek administrative remedies are well established. Premature litigation may be avoided, an adequate record for judicial review may be compiled, and agencies retain the opportunity and autonomy to correct their own errors. *See Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 644 (Ind.1995). Even if the ground of complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion may still be required because "administra-

tive action may resolve the case on other grounds without confronting broader legal issues." *Sproles*, 672 N.E.2d at 1358.

### A. Objecting to the Tax Levy

■ The State Board points to two administrative remedies that it contends must be pursued before the taxpayers may bring suit. First, pursuant to Indiana Code § 6–1.1–17–5(b), "Ten (10) or more taxpayers may object to a budget, tax rate, or tax levy of a political subdivision ... by filing an objection petition with the proper officers of the political subdivision not more than seven (7) days after the hearing." Under Indiana Code § 6–1.1–17–3, a political subdivision is required to hold a public hearing after it has formulated its estimated budget. If an objection petition is subsequently filed, then the political subdivision must, along with its budget, adopt a finding regarding the petition.[9] This provision appears in the general property tax statutes. It is not, in our view, an administrative remedy required to be exhausted before a taxpayer may challenge an unlawfully collected tax. Theoretically, each property's valuation and every amount budgeted affects the levy of each "political subdivision." The effect of a requirement that each taxpayer who wishes to challenge, for example, the assessment of his property, must object to the budget or levy would be to cause a large volume of essentially pro forma objections to no practical purpose. This could not have been the intent of the legislature. The tax

9. The Indiana Code provides for revision or reduction of a political subdivision's budget by the County Board of Tax Adjustment in order to: "limit the tax rate to the maximum amount permitted under IC 1971, 6–1.1–18 [Limitations on Property Tax Rates and Appropriations]" and "limit the budget to the amount of revenue to be available in the ensuing budget year for the political subdivision." Ind.Code § 6–1.1–17–6 (1998). The County Board of Tax Adjustment is also directed to make recommendations for revision of the budget to the State Board of Tax Commissioners if the County Board determines "that the maximum aggregate tax rate permitted within

a political subdivision ... is inadequate," *Id.* § 6–1.1–17–8, or if "the aggregate tax rate within a political subdivision, as approved or modified by the county board of tax adjustment, exceeds the maximum aggregate tax rate prescribed...." *Id.* § 6–1.1–17–10 (1998).

Under Indiana Code § 6–1.1–17–11, the budget, tax rate, or tax levy is final unless "(2) the action of the county board is subject to review by the state board of tax commissioners under section 8 or section 10 of this chapter; or (3) an appeal to the state board of tax commissioners is initiated with respect to the budget, tax rate, or tax levy."

code otherwise allows petitions for reassessment of real property. *See* Ind.Code § 6–1.1–4–5 (1998). In addition, the State Board has the discretion to revise an assessment of all or a portion of the property located in this state "[i]n order to maintain a just and equitable valuation of real property." *Id.* § 6–1.1–4–9. There is no comparable provision for the property owner who wishes to challenge the assessment of the HCI levy, and even if a property owner challenges the levy with nine other taxpayers, the formula for calculating the HCI tax levy is statutorily prescribed, and therefore the State Board cannot alter it.

### B. *Claim for Refund*

■ The second remedy the State Board identifies is a claim for a refund. Pursuant to Indiana Code § 6–1.1–26–1, a taxpayer may file a claim for refund, which, if denied, constitutes a final determination reviewable by the Tax Court.[10] The petitioners correctly point out that there is no statute authorizing the State Board to order a refund, even if it should determine, pursuant to Ind.Code § 6–1.1–26–1(4)(ii), that the tax is "illegal" as a matter of law. In that respect, they are in the same position as the taxpayer in *Sproles*, who protested that exhaustion of remedies was not required because the agency could not declare its own statute unconstitutional. *See Sproles*, 672 N.E.2d at 1353. We nevertheless held that exhaustion was required. The Tax Court recognized this point, but nonetheless found the claim for a refund unavailable because the legislature "could not have intended" that the refund procedure of Ind.Code § 6–1.1–26–5 apply. *See Lake County Council*, 706 N.E.2d at 278. For

the reasons the Tax Court identified in support of its own jurisdiction, however, one reason to require that procedure is to force the dispute into a channel that leads ultimately to the Tax Court. This, as noted in *Sproles*, avoids the problem of multiple conflicting litigation on a matter as complex and critical to state government as the validity of a tax. This also provides for the legal infrastructure to process the case in an orderly manner, including timetables for decision.

The Tax Court rejected this contention on the ground that the County must pay the refund, and there is no explicit provision under the HCI statute for the State to reimburse the County for refunds to taxpayers. This result would be, the Tax Court pointed out, highly problematic in terms of fairness and perhaps also legality. For that reason, the Tax Court· concluded that the legislature did not consider the procedure to obtain a refund of the HCI tax unlawfully collected and therefore there was none available.

The State Board points out, however, that Ind.Code § 6–1.1–27–6(b) provides for repayment by the State of tax overpayments, and applies generally to all taxes. It therefore provides a workable mechanism for the county to recover from the State for any required taxpayer refunds. It thereby avoids the difficulties the Tax Court identified in reliance on the refund procedure as a remedy for unlawfully collected HCI taxes. In short, a claim for refund may be presented and, if refused, will permit the taxpayer petitioners to proceed to the Tax Court with their contentions.[11]

---

10. A claim for a refund pursuant to Ind.Code § 6–1.1–26–1 must be:

(1) filed with the auditor of the county in which the taxes were originally paid;
(2) filed within three (3) years after the taxes were first due;
(3) filed on the form prescribed by the state board of accounts and approved by the state board of tax commissioners; and

based upon one (1) of the following grounds:

. . .
(ii) The taxes, as a matter of law, were illegal.
. . . .

11. Subsection 6(a) also provides for deduction of refunds for amounts paid. That remedy may or may not be adequate depending on

## II. The Jurisdiction of the Tax Court

The Tax Court identified a number of reasons why in its view this case should be presented directly to the Tax Court, notwithstanding the absence of any specific grant of jurisdiction. In general, these track the considerations outlined in *Sproles* that favor concentration of tax litigation in one forum with expertise and avoiding inconsistent results on issues of significance to financing state and local government statewide. The sound policy reasons supporting the Tax Court's direct jurisdiction also argue in favor of requiring exhaustion of the refund procedure, because that process ultimately brings the case to the Tax Court. If the legislature wishes to confer original jurisdiction on the Tax Court to entertain claims of unconstitutional taxation, it is of course free to do so. The current statutory framework limits access to the Tax Court to specified procedural channels. For the reasons discussed in *Sproles*, it is not irrational to require plaintiffs who wish to present such a claim to proceed through the administrative apparatus the legislature has set up to deal with tax disputes, even if the ultimate constitutional issue may be resolved only at the Tax Court stage. That requirement assures that an adequate record is developed and that non-constitutional issues that may moot the constitutional challenge will be considered. The advantages of consolidating the litigation in a forum with expertise are retained. If the cost in time and effort imposed by this procedure is too great, the remedy lies with the General Assembly.

█ Finally, the Tax Court held that Lake County, but not the other non-taxpayer petitioners, had standing to pursue this claim. Because we have concluded that the tax court has jurisdiction only to the extent granted by statute, the claims of Lake County and the other governmental entities and officials must also be dismissed. None of these petitioners sought review of an order of the State Board or the timing and amounts of the refund com-

otherwise meets the jurisdictional requirements of the Tax Court. Thus, we need not address whether they have standing to pursue this claim.

### Conclusion

We reverse the judgment of the Tax Court and remand with direction to dismiss the petitioners' claim for declaratory relief against the State Board of Tax Commissioners.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

pared to subsequent amounts due.