Veronica EMBRY, Thomas G. Burns, George Nickas, and David Hoffman, Appellants–Plaintiffs,

v.

Frank O'BANNON, in his official capacity as Governor of Indiana, and Suellen Reed, in her official capacity as Superintendent of Public Instruction for the State of Indiana, Appellees–Defendants.

No. 49A02–0112–CV–863.

Court of Appeals of Indiana.

July 2, 2002.

Kenneth J. Falk, Indianapolis, IN, Attorney for Appellants.

Stephen R. Carter, Attorney General of Indiana, Thomas M. Fisher, Special Counsel, Laureanne Nordstrom, Deputy Attorney General, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Veronica Embry, Thomas G. Burns, George Nickas, and David Hoffman (the "Plaintiffs") appeal the trial court's grant of summary judgment in favor of Defendants–Appellees Frank O'Bannon, in his official capacity as Governor of Indiana ("Governor O'Bannon"), and Suellen Reed, in her official capacity as Superintendent of Public Instruction for the State of Indiana ("Superintendent Reed").

We affirm.

### ISSUE

The following issue is dispositive: whether, as a matter of law, the Plaintiffs

have standing as taxpayers to challenge the expenditure of public funds.

*FACTS AND PROCEDURAL HISTORY*

Article 8, Section 1 of the Indiana Constitution requires the General Assembly to "provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all." Consistent with this constitutional requirement, the General Assembly has declared that Indiana's educational policy is to furnish public schools "equally open to all and prohibited and denied to none because of race, creed, color or national origin." Ind.Code § 20–8.1–2–1(b).

In order to effectuate the constitutional requirement, the General Assembly has created public school corporations and has required those corporations to educate all children who "reside within the school corporation" without charging tuition to those children. *See* Ind.Code § 20–5–2–1.2. A school corporation must accept for enrollment a child with "legal settlement" in the school district. Ind.Code § 20–8.1–6.1–1. The term "legal settlement" of a student means "the student's status with respect to the school corporation which has the responsibility to permit the student to attend its local public schools without the payment of tuition...." Ind.Code § 20–8.1–1–7.1.

Public school corporations receive funding from the State in order to carry out their duty to enroll and educate all children with legal settlement in their districts. *See generally* Ind.Code § 21–1–1–1 et seq. and Ind.Code § 21–3–1–1 et seq. The State distributes public funds to school corporations based on the number of eligible children with legal settlement that the school corporation is educating. Thus, state funding is based largely on the school corporation's average daily membership of eligible students. A school corporation's average daily membership is determined by following a statutory formula, the aim of which is to fund each school corporation based on the number of full-time students with legal settlement plus a proportionate amount for part-time students with legal settlement (i.e. students who are enrolled and receive some instruction from the school corporation while also enrolled and receiving instruction at a non-public school). *See* Ind.Code §§ 21–3–1.6–1.1 and 1.2. In this way, each school corporation's average daily membership count, and therefore its state funding, reflects the actual amount of instruction the school corporation is providing to those students who do not have to pay tuition.

In order to facilitate the instruction of students who are enrolled in both the school corporation and a non-public school, a number of school corporations have entered into "dual enrollment agreements" with the non-public schools. The provisions of the dual enrollment agreements vary, but generally they provide that public school teachers will teach one or more classes of dual-enrolled public school students on the premises of a non-public school. The courses that the public school teachers teach to the public school students under the dual-enrollment agreements generally are not included in the non-public school's curriculum. A student who completes one of these public school courses receives a grade and credit for the course on the student's public school record, not on the student's non-public school record. In order to provide for the teaching of computer courses under dual enrollment agreements, two school corporations have secured the use of rooms in non-public schools in which computer equipment is installed and internet service is provided and paid for by the school corporation.

The Plaintiffs filed suit challenging the validity of the dual enrollment agreements entered into between Indiana school corporations and local parochial schools in which public school teachers teach subjects and provide internet services in rooms provided by the parochial schools. Under the agreements, students who have dual enrollment in the school corporation and the parochial schools benefit from the teachers and services provided by the school corporation. These students take the classes and use the internet services for credit on their public school record. The Plaintiffs argued that the practice of paying school teachers from public funds to teach on parochial school property was a violation of Article I, § 6 of the Indiana Constitution, which provides that "[n]o money shall be drawn from the treasury, for the benefit of any religious or theological institution."

The trial court granted summary judgment in favor of Governor O'Bannon and Superintendent Reed. In so doing, the trial court issued findings of fact and conclusions of law. The trial court concluded that the Plaintiffs' taxpayer status was insufficient to give them standing because they suffered no direct injury. The trial court also concluded that Governor O'Bannon and Superintendent Reed were entitled to summary judgment on the basis that there was no designated evidence establishing that Governor O'Bannon and Superintendent Reed directed or even approved of the dual enrollment agreements. The trial court stated that the Plaintiffs' challenge was actually directed to the validity of the individual agreements of various Indiana school corporations, not toward State policy espoused or enforced by Governor O'Bannon or Superintendent

Reed. Finally, the trial court concluded that the school corporations' use of parochial school classrooms to teach public school courses to students with dual enrollments did not violate Article I, § 6 of our constitution.[1] The Plaintiffs now appeal.

## DISCUSSION AND DECISION

The Plaintiffs contend that the trial court erred in determining that they lacked standing to challenge the payment of public funds under dual enrollment agreements. The Plaintiffs argue that they have standing as taxpayers to challenge practices that violate the constitutional prohibition against spending public funds for the benefit of religious institutions.

The issue of taxpayer standing was addressed by our supreme court in *Pence v. State*, 652 N.E.2d 486 (Ind.1995). In that case, Pence, an Indiana citizen and taxpayer, joined with a number of other concerned citizens (collectively, "Pence") in a suit against the General Assembly, asserting that a law passed by the General Assembly concerned more than a single topic, in violation of Article IV, § 19 of the Indiana Constitution and increased the pay of the members of the General Assembly while it was in session, in violation of Article IV, § 29 of the constitution. The trial court determined that the law violated neither of the constitutional provisions and granted summary judgment for the defendants.

On appeal, our supreme court determined that the dispositive issue was whether Pence had standing as a citizen and taxpayer to challenge the constitutionality of the law. The court noted that the standing requirement is "an essential ini-

---

**1.** Findings of fact and conclusions of law are neither required nor prohibited in the summary judgment context. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App.1998). Although specific findings and conclusions aid appellate review, they are not binding on this court. *Id.*

tial element ... serving as an important check on the exercise of judicial power by Indiana courts." *Id.* at 488. The court described standing as the "key component in maintaining our state constitutional scheme of separation of powers." *Id.* The court then observed that:

> While the availability of taxpayer or citizen standing may not be foreclosed in extreme circumstances, it is clear that such status will rarely be sufficient. For a private individual to invoke the exercise of judicial power, such person must ordinarily show that some direct injury has or will immediately be sustained. "[I]t is not sufficient that he has merely a general interest common to all members of the public."

*Id.* (quoting *Terre Haute Gas Corp. v. Johnson*, 221 Ind. 499, 505, 45 N.E.2d 484, 486 (1942)). The court ultimately held that Pence lacked standing because he "failed to demonstrate any interest beyond that of the general public." *Id.* In so holding, the four-justice majority rejected the dissent's position that Pence had standing on the dual bases that (1) a taxpayer may challenge the expenditure of public funds by state officials, and (2) a citizen may challenge allegedly unconstitutional or illegal conduct of state officials because "[w]here public rather than private rights are at issue, the usual requirements for establishing standing need not be met." *Id.* at 489 (J. Dickson dissenting).

In the later case of *Fort Wayne Education Association v. Indiana Department of Education*, 692 N.E.2d 902 (Ind.Ct.App. 1998), *trans. denied*, the Appellants, consisting of a number of parents and taxpayers, challenged the constitutionality of an agreement between a school corporation's trustees and a high school in which the trustees agreed to pay a certain amount per semester for each student enrolled in an alternate education program provided by the high school. The trial court dismissed the Appellants' suit for lack of standing.

On appeal, the Appellants argued that they would suffer a direct injury from the agreement between the trustees and the high school because their children attended the local schools and any money used to fund the agreement would not be available for other programs. *Id.* at 904. This court affirmed the trial court, holding that the Appellants had failed "to demonstrate any direct injury as required by *Pence*." *Id.* at 905.

In the present case, the Plaintiffs rely solely upon their taxpayer status as justification for invoking judicial power to prevent the expenditure of public funds under the dual enrollment agreements. Thus, they allege that the direct injury that gives them such justification is the alleged misallocation of taxes they paid into the public coffers, an allegation similar, if not identical, to the allegation rejected by this court in *Fort Wayne Education Association*. The Plaintiffs have failed to comply with the *Pence* requirement that they demonstrate an interest beyond that of the general public.[2] Thus, they have not shown or even alleged the "extreme circumstances" necessary to give them taxpayer standing.

The Plaintiffs cite *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), in which the United States Su-

---

**2.** The Plaintiffs make a passing argument that their interest is different from those members of the general public who do not pay taxes. The Plaintiffs' status as taxpayers is premised upon their payment of income, sales, and/or local taxes. We find it hard to believe that there is any Indiana citizen that has never made a purchase that required him or her to pay sales tax. The Plaintiffs' interest is common to that of the general public.

preme Court found standing where a taxpayer alleged that an enactment exceeded specific federal constitutional limitations on the expenditure of funds paid into the public coffers by the taxpaying public. The Plaintiffs also cite cases in which state courts found standing where a taxpayer's claim was based upon the allegedly improper use of his or her tax funds. *See e.g., Common Cause v. Maine,* 455 A.2d 1 (Me.1983). In light of the requirement in *Pence* that a taxpayer must show an interest different from that of the general public, we do not believe that the aforementioned cases are persuasive. Furthermore, we do not believe that a claim based on the expenditure of public funds necessarily amounts to a claim of "extreme circumstances" as that term is used in *Pence.* When the *Pence* majority opinion is read in conjunction with the *Pence* dissent, it is clear that a taxpayer must show more than just his common status with other taxpayers to establish standing. The court cannot ignore the strictures set forth in *Pence.* Any expansion of the parameters of *Pence* must be made by our supreme court.

### CONCLUSION

The trial court properly determined, as a matter of law, that the Plaintiffs lacked standing to pursue this action. Affirmed.

SHARPNACK, J., and BAILEY, J., concur.