BP PRODUCTS NORTH AMERICA INC., Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-MENT FINANCE; Jon Laramore, Commissioner; Peter Benjamin, in his official capacity as Lake County Auditor; and Peggy Holinga Katona, in her official capacity as Lake County Treasurer, Respondents,

City of East Chicago, School City of East Chicago, and East Chicago Public Library, Intervening Respondents.

No. 49T10–0203–TA–25.

Tax Court of Indiana.

Aug. 21, 2002.

Jeffrey T. Bennett, Steven G. Cracraft, Michael S. Prakel, Bingham McHale LLP, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Clorius Lee Lay, Gary, IN, John Robert Cantrell, Schererville, IN, Attorneys for Respondents.

Barton T. Sprunger, David M. Mattingly, Ice Miller Donadio & Ryan, Indianapolis, IN, Attorneys for Intervening Respondents.

ORDER ON MOTION TO DISMISS

FISHER, J.

BP Products North America Inc. (BP), appeals the Indiana Department of Local Government Finance's (DLGF) February 15, 2002 certification of the budgets, tax rates, and tax levies (Tax Package) for East Chicago, Lake County, Indiana. The City of East Chicago, School City of East Chicago, and the East Chicago Public Library (City Entities) as intervening respondents have filed a motion to dismiss. They claim that the Court lacks jurisdiction to decide this case because the DLGF's certification does not constitute a final determination. Therefore, the issue before the Court today is whether the Court has subject matter jurisdiction to decide BP's appeal.

For the reasons stated below, the Court GRANTS the City Entities' motion to dismiss.

### FACTS AND PROCEDURAL HISTORY

LTV Steel (LTV) conducted business in East Chicago, located in Lake County, Indiana. In late December of 2000, LTV publicly announced that pursuant to its Chapter 11 Bankruptcy Reorganization, it was seeking court approval to shut down its East Chicago plant.

On August 1, 2001, the Lake County Auditor, Peter Benjamin, certified the assessed values of East Chicago for the 2001 tax year payable in 2002. On October 18, 2001, Lake County issued a "Notice to Taxpayers of Lake County of Proposed Tax Rates." This was published in local newspapers on October 24, 2001.

As of November 21, 2001, LTV had not paid its May and November property tax installments for the 2000 tax year payable in 2001, and it did not appear to the Lake County Auditor that LTV would be paying any future tax bills. Consequently, the

Lake County Auditor sought a formal opinion from the State Board of Tax Commissioners (State Board)[1] giving him approval to exclude the assessed value of LTV's property pursuant to Indiana Code Section 6–1.1–17–0.5[2] and to re-certify the assessed values for the 2001 tax year payable in 2002. The State Board declined to issue an opinion giving its approval, and instead, stated that the statute empowered the county auditor to make the decision as to whether to exclude the assessed value of LTV's property. On December 31, 2001, the Lake County Auditor excluded the assessed value of LTV's property and re-certified the assessed values of East Chicago (Auditor's December Re-certification).

BP owns property in East Chicago. On February 5, 2002, BP sent a letter to the DLGF asserting that the $303,133,613 reduction in assessed value (due to the exclusion of LTV) reflected in the Auditor's December Re-certification unfairly burdened it and other East Chicago taxpayers by inequitably increasing the effective property tax rate. BP requested that the DLGF invalidate the Auditor's December Re-certification and reinstate the original August 1, 2001 certification because: 1) the Auditor's December Re-certification was performed after the statutory deadline;[3] 2) the Auditor improperly excluded LTV from the tax duplicate;[4] and 3) the Auditor's December Re-certification was in violation of the Indiana and United States constitutions.[5] BP asserted that it would incur an estimated additional $1.7 million in tax liability as a result of the exclusion of LTV's property.

1. The legislature abolished the State Board as of December 31, 2001. P.L. 198–2001, § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance (DLGF), IND.CODE § 6–1.1–30–1.1 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 66, and the Indiana Board of Tax Review (Indiana Board). IND.CODE § 6–1.5–1–3 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 95.

2. Indiana Code Section 6–1.1–17–0.5, which was passed by the legislature in 2001, provides:

> (a) For purposes of this section, "assessed value" has the meaning set forth in IC 6–1.1–1–3(a).
> (b) The county auditor may exclude and keep separate on the tax duplicate for taxes payable in a calendar year the assessed value of tangible property that meets the following conditions:
>> (1) The assessed value of the property is at least nine percent (9%) of the assessed value of all tangible property subject to taxation by a taxing unit (as defined in IC 6–1.1–1–21).
>> (2) The property is or has been part of a bankruptcy estate that is subject to protection under the federal bankruptcy code.

> (3) The owner of the property has discontinued all business operations on the property.
> (4) There is a high probability that the taxpayer will not pay property taxes due on the property in the following year.
> (c) This section does not limit, restrict, or reduce in any way the property tax liability on the property.
> IND CODE § 6–1.1–17–0.5.

3. BP asserts that Indiana Code Section 6–1.1–17–1(a) requires that the certification must be sent to the DLGF on or before August 1st for the next calendar year.

4. BP contends that the four requirements of Indiana Code Section 6–1.1–17–0.5(b), which allows the exclusion of certain bankruptcy property from the tax duplicate, were not met.

5. BP claims a violation of Article 10 Section 1 of the Indiana Constitution and the Equal Protection clauses of the Indiana and United States Constitutions (U.S. Const.Amend.XIV). BP claims that Indiana Code Section 6–1.1–17–0.5 is unconstitutional because by excluding the property subject to bankruptcy, it permits one taxpayer's tax burden to be redistributed to others without regard for the taxpayer's property values.

On February 15, 2002, the Auditor revised and re-certified the Auditor's December Re-certification (Auditor's February Re-certification), which reflected an increase in the assessed value of East Chicago.[6] On that same day, the DLGF certified the East Chicago Tax Package including the assessed values re-certified by the Auditor earlier that same day (DLGF February Certification).[7]

On March 4, 2002, BP filed a petition for judicial review of a final determination of the DLGF in this Court claiming that: 1) the DLGF certified the December 31, 2001 and the February 15, 2002 assessed values despite their untimeliness and illegality, and 2) because the DLGF could not rule on the constitutionality of Indiana Code Section 6–1.1–17–0.5(b), BP was forced to seek judicial review on that issue. BP claims that the DLGF's certification of the East Chicago Tax Package constitutes a final determination.

On May 14, 2002, the City Entities filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(1).[8] The City Entities claimed that this Court lacked subject matter jurisdiction because there was no final determination from which BP could appeal, and that BP had failed to exhaust its administrative remedies. On June 6, 2002, the Lake County Auditor filed a motion to dismiss stating the same reasons for dismissal as the City Entities.

On June 10, 2002, the Court held a hearing on these motions.[9] Additional facts will be provided as necessary.

## ANALYSIS, OPINION & ORDER

■ As mentioned above, the Court must determine whether it has subject matter jurisdiction over BP's appeal. "Subject matter jurisdiction is the power of a court to hear and determine the general class of cases to which the proceedings before it belong." *Whetzel v. Dep't of Local Gov't Fin.*, 761 N.E.2d 904, 906 (Ind. Tax Ct.2002). Whether a court has subject matter jurisdiction "depends on whether the type of claim advanced by the petitioner falls within the general scope of authority conferred upon the court by constitution or statute." *Musgrave v. State Bd. of Tax Comm'rs*, 658 N.E.2d 135, 138 (Ind. Tax Ct.1995).

■ "The Tax Court is a court of limited jurisdiction." *State Bd. of Tax Comm'rs v. Mixmill Mfg. Co.*, 702 N.E.2d 701, 702 (Ind.1998); IND.CODE § 33–3–5–2(a). This Court has jurisdiction over:

> any case that arises under the tax laws of this state and that is an initial appeal initiated after December 31, 2001, of a *final determination* made by the

---

6. The record does not reveal what revisions the Auditor made to the assessed values.

7. Pursuant to Indiana Code Section 6–1.1–17–16(a) "the state board of tax commissioners may revise, reduce, or increase a political subdivision's budget, tax rate, or tax levy which the board reviews under section 8 or 10 of this chapter." IND.CODE § 6–1.1–17–16(a). Indiana Code Section 6–1.1–17–16(g) states that "[t]he state board of tax commissioners is expressly directed to complete the duties assigned to it under this section not later than February 15th of each year for taxes to be collected during that year." IND. CODE § 6–1.1–17–16(g).

8. The City Entities also move for dismissal pursuant to Trial Rule 12(B)(6) asserting that BP failed to state a claim upon which relief could be granted arguing that the DLGF had no authority to "nullify" or "correct" the Lake County Auditor's re-certifications. However, because the Court grants their motion to dismiss for lack of subject matter jurisdiction, it is not necessary for the Court to address this issue. *See infra.*

9. The Court also heard BP's petition to enjoin the collection of tax.

[DLGF] if the following apply: (1) The tax court would have had jurisdiction over the case if the appeal had been initiated before January 1, 2002.(2) This act does not provide that the final determination is subject to appeal to the Indiana board of tax review.

P.L. 198–2001, § 116 (emphasis added).[10] A final determination is an order that "determine[s] the rights of, or impose[s] obligations on, the parties as a consummation of the administrative process." *Mills v. State Bd. of Tax Comm'rs,* 639 N.E.2d 698, 701 (Ind. Tax Ct.1994); *see also Lake County Council v. State Bd. of Tax Comm'rs,* 706 N.E.2d 270, 275 (Ind. Tax Ct.1999), *rev'd on other grounds* by 730 N.E.2d 680 (Ind.2000); *Matonovich v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1093, 1095 (Ind. Tax Ct.1999), *review denied.* The Court can also be conferred jurisdiction by statute.[11] I.C. § 33–3–5–2(b). The legislature has been clear in providing that "[i]f a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." IND.CODE § 33–3–5–11(a); *Mixmill,* 702 N.E.2d at 702.

■■ The parties do not dispute and the Court agrees[12] that this case arises under the Indiana tax laws. Therefore,

the Court will look only to whether the DLGF issued a final determination in this case. The Court will analyze BP's case by looking at whether the DLGF's February Certification of the East Chicago Tax Package meets the definition of a final determination.

■ The Court first looks to whether BP was a "party" to the DLGF's February Certification. As stated earlier, BP sent a letter to the DLGF on February 5, 2002 asking the DLGF to invalidate the Auditor's December Re-certification. BP requested that the DLGF include LTV's assessed value in its upcoming certification of East Chicago. BP asserts that by mailing the letter it became a "party to a 'proceeding.' " (Pet'r Post Hearing Br. at 3.) BP contends that by sending this letter it was "filing its petition with the DLGF" and the DLGF had "a legal duty to act, not just an administrative function to perform." (Pet'r Post Hearing Br. at 3.) Although the DLGF did not respond to the letter, BP contends that the DLGF's February Certification of the East Chicago Tax Package constituted a final determination.

BP's letter to the DLGF did not convert the certification into an adjudicatory pro-

---

**10.** The Court also has jurisdiction over certain final determinations of the Indiana Board of Tax Review and the Indiana Department of State Revenue. *See* IND.CODE § 33–3–5–2.

**11.** BP does cite to nor does the Court find any statute that specifically assigns this Court jurisdiction to decide appeals from the DLGF's certification of Tax Packages nor is there any statute pointed out that allowed such appeals to have been taken from State Board certifications in the past.

**12.** "A case 'arises under' the tax laws of Indiana if: 1) an Indiana tax statute creates the right of action; or 2) the case principally involves collection of a tax or defenses to that

collection.' " *Lake County Council v. State Bd. of Tax Comm'rs,* 706 N.E.2d 270, 274 (Ind. Tax Ct.1999), *rev'd on other grounds* by 730 N.E.2d 680 (Ind.2000). This case involves the DLGF's power to reduce, revise, or increase a political subdivision's budget, tax levy or tax rate pursuant to Indiana Code Section 6–1.1–17–16. In addition, BP contests the constitutionality of Indiana Code Section 6–1.1–17–0.5, which allows certain properties to be excluded from the tax duplicate. As the parties do not dispute, because this case involves the defense to the collection of property tax, it "arises under" the tax laws of this state. *See id.*

cess[13] wherein BP could make itself a party. BP cannot confer subject matter jurisdiction upon the Court by sending a letter to the DLGF and insisting that the letter changed the DLGF's February Certification into an adjudicatory proceeding. *C.f. Lake County Council,* 706 N.E.2d at 274 (stating that the parties cannot confer subject matter jurisdiction upon the Court). Moreover, in *Board of School Commissioners of City of Indianapolis v. Eakin,* the Indiana Supreme Court discussed the State Board's authority to "revise, reduce, or increase" certain tax packages that it was required to review. *Board of School Comm'rs of City of Indianapolis v. Eakin,* 444 N.E.2d 1197, 1201 (Ind.1983). The Court held that in a non-appellate review of tax packages, interested people may submit information for the State Board to consider, but the State Board has the discretion to decide what information is useful and what it will reject as irrelevant or extraneous. *Id.* at 1202. Accordingly, the DLGF could have considered the information provided in BP's letter if it found the information useful or could have ignored it. Either way, the letter submitted to the DLGF did not make BP a party to the DLGF February Certification.

Second, the Court looks to whether the DLGF's February Certification "imposed obligations on" BP. BP contends that the DLGF's February Certification is a final determination because it imposes obligations on it and other taxpayers to pay higher property taxes in 2002 without having the option of further administrative review. While the certification of every tax package imposes obligations on all taxpayers within the taxing unit, every certification cannot be a final determination giving the taxpayer a right of direct appeal to the Tax Court. BP must show that it suffered direct injury to have standing to bring this case. *See Embry v. O'Bannon,* 770 N.E.2d 943, 946–47 (Ind.Ct.App.2002) (holding a party must demonstrate an interest beyond that of the general public to have standing). It is simply not enough to have a general interest common to all the other taxpayers. *See id.* BP has not shown that it has more than a general interest common to all the East Chicago taxpayers. Moreover, if the DLGF were required to "conduct full-scale, quasi-judicial proceedings in conjunction with" reviews of all tax packages, its ability to review the large number of tax packages submitted to it in accordance with statutory deadlines would be severely hindered and would make the "property tax disbursement scheme unworkable." *See Eakin,* 444 N.E.2d at 1202.

Third, the Court looks to whether the DLGF's February Certification constituted "a consummation of the administrative process." BP posits that the DLGF February Certification was a consummation of the administrative process because Indiana Code Section 6–1.1–17–16(f)[14] provides

---

**13.** This Court has held that the State Board's certification of an HCI property tax levy rate was not a final determination because the certification proceeding was not adjudicatory. *Montgomery v. State Bd. of Tax Comm'rs,* 708 N.E.2d 936, 940 n. 7 (Ind. Tax Ct.1999), (stating that the State Board was not operating in an adjudicatory manner when it certified the Lake County HCI property tax levy rate), *rev'd on other grounds by* 730 N.E.2d 680 (Ind. 2000).

**14.** The language in Indiana Code Section 6–1.1–17–16 still refers to the "state board of tax commissioners," an entity that no longer exists. *See* P.L. 198–2001 § 119(b)(2). However, Public Law 198–2001, Section 119 states that until the Indiana legislative Services Agency prepares legislation to correct internal references in the Indiana Code takes effect, "a reference in the Indiana Code to the state board of tax commissioners is, after December 31, 2001, considered to be a reference to

that "[t]he action of the [DLGF] on a budget, tax rate, or tax levy is final." IND. CODE § 6–1.1–17–16(f). However, this statute does not state that the action is a final determination that would be directly appealable to the Tax Court. *See id.* BP has other administrative remedies to pursue before the Court will have jurisdiction over its appeal. For example, BP could pay the taxes and then file a claim for refund pursuant to Indiana Code Section 6–1.1–26–1 [15], which if denied, constitutes a final determination that would be reviewable by this Court. *See State Bd. of Tax Comm'rs v. Montgomery,* 730 N.E.2d 680, 685 (Ind.2000).

The DLGF February Certification does not meet any of the definitional elements of a "final determination." BP has not shown that it is a party upon which the DLGF's February Certification imposed obligations on as a consummation of an administrative process. Therefore, the Court holds that the BP February Certification does not constitute a final determination.

█ BP raises a number of additional arguments in an attempt to persuade this Court to hear its case today. First, BP contends that direct appeal to the Tax Court is the most efficient method of appealing. BP asserts that waiting to pay the tax and then requesting a refund is not "administratively economical." Generally, exhaustion of administrative remedies is required before a court may exercise jurisdiction over a matter conferred to an administrative agency. *Smith v. State Lottery Comm'n,* 701 N.E.2d 926, 931 (Ind.Ct. App.1998), *trans. denied.* An exception to this general rule exists when administrative remedies are not adequate. *Id.* As mentioned above, BP has other administrative remedies to pursue before the Court will have jurisdiction over its appeal.

Second, BP argues that its case is similar to *Ispat Inland, Inc. v. State Board of Tax Commissioners,* because BP, like Ispat, requested review pursuant to Indiana Code Section 6–1.1–35–1,[16] which allows the DLGF to interpret the Indiana tax

---

the department of local government finance or the Indiana board of tax review, as the context requires." P.L. 198–2001, § 119. The context of Indiana Code Section 6–1.1–17–16 requires that "state board of tax commissioners" be read as the "department of local government finance." *See id.* The DLGF has taken on the administrative duties of the former state board of tax commissioners. *Compare* IND.CODE § 6–1.1–30–14 *with* IND.CODE § 6–1.1–30–14 (West 2000).

**15.** The statute governing claims for refund provides:

A person ... may file a claim for the refund of all or a portion of a tax installment which he has paid. However, the claim must be:
(1) filed with the auditor of the county in which the taxes were originally paid;
(2) filed within three (3) years after the taxes were first due;
(3) filed on the form prescribed by the state board of accounts and approved by the state board of tax commissioners; and

(4) based upon one (1) of the following grounds:
\* \* \* \*
(ii) The taxes, as a matter of law, were illegal.
\* \* \* \*
IND CODE § 6–1.1–26–1.

**16.** Indiana Code Section 6–1.1–35–1 provides:

The [DLGF] shall:
(1) interpret the property tax laws of this state;
(2) instruct property tax officials about their taxation and assessment duties and ensure that the county assessors, township assessors, and assessing officials are in compliance with section 1.1 of this chapter;
(3) see that all property assessments are made in the manner provided by law; and
(4) develop and maintain a manual for all assessing officials and county assessors concerning:
  (A) assessment duties and responsibilities of the various state and local officials;

laws. *Ispat Inland, Inc. v. State Bd. of Tax Comm'rs*, 757 N.E.2d 1078, 1081–82 (Ind. Tax Ct.2001), *review granted.* However, that is where the similarity ends.

In *Ispat*, the State Board specifically acted in response to Ispat's letter requesting it to interpret the tax laws. *Ispat*, 757 N.E.2d at 1081–82. Thereafter, the State Board issued a Decision directly to Ispat explaining what Ispat's obligations would be. *Id.* at 1082–84. Furthermore, following the State Board's Decision, there was no other administrative proceeding for Ispat to pursue regarding its challenge. *Id.* at 1084.

Here, BP's letter did not provoke the DLGF to act. The DLGF was already acting on its own volition and in its administrative function when it issued the February Certification. Also, the DLGF did not issue any sort of response directly to BP in reply to BP's letter. Finally, unlike Ispat, BP still has administrative remedies available to pursue.

▆ Third, BP argues that this Court must decide its case because the DLGF did not have the power to resolve the constitutionality of Indiana Code Section 6–1.1–17–0.5. Despite BP's complaint that the statute was unconstitutional, it is still required to exhaust its administrative remedies because during the administrative action, nonconstitutional issues may render the constitutional challenge moot. *See Montgomery*, 730 N.E.2d at 684, 686.

Fourth, BP argues that the DLGF's February Certification can be appealed to this Court because the revised Tax Court Rules provide for specific procedures for appeals from a final determination by the DLGF to the Tax Court. *See* Ind. Tax Court Rule 4(A)(1).[17] Citing *Browning v. Walters*, BP asserts that these rules have the binding force of a statute. *See Browning v. Walters*, 620 N.E.2d 28, 31 (Ind.Ct. App.1993). However, BP does not acknowledge that the Tax Court Rules also provide that "[n]othing in this rule shall relieve a party from complying with statutory requirements for bringing an original tax appeal." Ind. Tax Court Rule 4(A)(1). Because the Court has decided that the DLGF February Certification did not constitute a final determination, this argument is without merit.

## CONCLUSION

For the foregoing reasons, the City Entities' motion to dismiss for lack of subject matter jurisdiction is GRANTED.

(B) assessment procedures and time limits for the completion of assessment duties;
(C) changes in state assessment laws; and
(D) other matters relevant to the assessment duties of assessing officials, county assessors, and other county officials.

IND.CODE § 6–1.1–35–1. This statute still uses the "state board of tax commissioners." It appears that P.L. 198–2001 did not amended it. However, according to Public Law 198–2001 the context would now require this ref- erence to be to the DLGF. P.L. 198–2001, § 119.

**17.** Indiana Tax Court Rule 4(A)(1) provides:

Notwithstanding anything to the contrary herein, the Tax Court acquires jurisdiction over ... the Department of Local Government Finance upon the filing of a petition with the clerk of the Tax Court seeking to set aside a final determination. Ind. Tax Court Rule 4(A)(1)